HASTINGS & DAKOTA RAILWAY COMPANY *vs.* JULIA D. WHITNEY and
Husband.

March 1, 1886.

Railroad Land Grant — Act of July 4, 1866 — Exceptions — Invalid
Homestead Entries.—An act of congress of July 4, 1866, in aid of the
construction of a railroad, grants to the state of Minnesota lands within
certain limits, with the exception, among others, of those to which it
"shall," when the line of road is definitely located, "appear * * *
that the right of pre-emption or homestead settlement has attached."
*Held,* that lands of which there is a homestead entry of record, valid
upon its face, are within the exception.

The plaintiff brought this action in the district court for Ramsey
county, to have the title to a certain tract of land adjudged to be in it,
and to have defendants barred from any interest or title.   The land
in question is in an odd-numbered section within the limits of plaintiff's
land grant, and is the property of the plaintiff unless taken out of
the grant by the following facts, viz.:   The line of plaintiff's road was
definitely located, and a map of such location was duly filed as re-
quired by law, on March 7, 1867.   On May 8, 1865, one Bentley S.
Turner, under the provisions of U. S. Rev. St. 2293, relating to
homestead entries by persons serving in the United States army, (he
being then a soldier in actual service,) made an affidavit and caused
the same to be filed in the local land-office in the district in which
the land in controversy is situated.   This affidavit was made before
his commanding officer, and alleged that Turner was the head of a
family, a citizen of the United States and a resident of Franklin
county, New York.   On this affidavit application was made through
one Onwell, whom Turner constituted his attorney for that purpose,
to enter the land in controversy.   This affidavit did not show or state
that the affiant's family or any member of it was residing on the land
sought to be entered, or that there was any improvement thereon, and
as a matter of fact no member of his family was then residing or ever
did reside on the land, and no improvements had ever been made

thereon by any one. Upon this application the register and receiver allowed the entry, and the same stood upon the records of the land-office until 1872, when it was duly cancelled. In 1877, the defendant Julia D. Whitney, in regular form, entered these same premises as a homestead, and now occupies and claims them as her homestead. On these facts judgment was directed for the plaintiff by *Brill*, J., from which the defendants appeal.

*M. O. Little*, for appellants.

*Gordon E. Cole*, for respondent.

BERRY, J. The act of congress of July 4, 1866, (14 U. S. St. at Large, 87,) under which plaintiff claims title to the land in controversy, grants to the state of Minnesota (to whose rights plaintiff has succeeded) five alternate sections of land on each side of what is now plaintiff's road; and provides that "in case it shall appear that the United States have, when the line or route of said road is definitely located, sold any section or part thereof, granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever," the secretary of the interior shall select, for the purposes of the grant, so much public land "as shall be equal to such lands as the United States have sold or otherwise appropriated, or to which the right of homestead settlement or pre-emption has attached, as aforesaid: * * * *provided*, that any and all lands heretofore reserved to the United States by any act of congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or other purpose whatever, be, and the same are hereby, reserved and excepted from the operations of this act." The land in dispute is within what is known as the "granted" or "lands in place" limits of the grant. The important question in the case is whether an alleged homestead entry of one Turner of the land in controversy took it out of the operation of the grant.

The homestead law provides that a citizen of the United States who is head of a family may enter 160 acres of unappropriated public land, subject, "at the time the application is made," to pre-emption at $1.25 per acre; and that the person applying "shall, upon appli-

cation to the register of the land-office in which he is about to make such entry, make affidavit before the register or receiver that he is the head of a family, * * * and that such application is made for his exclusive use and benefit; and that his entry is made for the purpose of actual settlement and cultivation; * * * and upon filing such affidavit with the register or receiver," and payment of a prescribed fee, "he shall thereupon be permitted to enter the amount of land specified." U. S. Rev. St. §§ 2289, 2290. A person desiring to make a homestead entry who, by reason of actual service in the army or navy of the United States, is unable to do the personal preliminary acts at the local land-office required by the provisions preceding, "*and whose family, or some member thereof, is residing on the land which he desires to enter, and upon which a bona fide improvement and settlement have been made,*" may make the affidavit required by law before his commanding officer, and "upon such affidavit being filed with the register by the wife or other representative of the party, the same shall become effective from the date of such filing." U. S. Rev. St. § 2293.

Turner's alleged homestead entry was made under this provision of law,—section 2293. So far as the *forms* of the papers evidencing his entry are concerned, they appear to have followed exactly those prescribed in the circular instructions issued to the local land-offices by the general land-office. See Zabriskie, Land Laws of U. S. (1877,) 151, 155, 172, 173; 2 Lester, Land Laws, 253. We perceive no reason why these forms were not properly prescribed, nor why they were not sufficient to satisfy the law; and hence we are not able to agree to the first position taken by plaintiff's counsel, which we understand to be that the alleged homestead entry is void upon the face of the papers by which it is sought to be evidenced.

And this brings us to consider the counsel's second position, viz., that the entry, if not void upon these papers, is void upon the facts in the case. It is admitted in pleading, and found by the trial court, that at the time when Turner's application was made and his affidavit filed, no improvement had been made on the land, and that no member of Turner's family has ever at any time resided thereon. The *terms* of the act of congress except from the grant, lands within its

limits to which "it shall *appear*" that "the *right* of pre-emption or homestead settlement has *attached*." We italicize what seem to us to be emphatic words. If we felt at liberty to put an original construction upon them, we should say that the exception is not of lands to which some person *claims* that a right of pre-emption or homestead settlement has attached, or to obtain title to which under the pre-emption or homestead laws some merely formal steps have been taken by him, and that a *right* of pre-emption or homestead settlement cannot be said to have *attached* except through compliance with the substantial provisions of law which prescribe the manner and means in and by which such right is to be acquired. Such would seem to us to be the plain and natural signification of the words used. As an original proposition, it would therefore have seemed to us that, upon the facts of this case found and admitted as before stated, Turner's entry was invalid, illegal, null and void, and that it did not *attach* to the land, or exclude or except it from the operation of the grant under which plaintiff claims; and this upon the ground that, under the act of congress, (section 2293,) the *bona fide* improvement and settlement, and the residence of some member of his family upon the land, were indispensable *conditions precedent* to his right of entry, and were entirely wanting; so that when plaintiff's road was definitely located, in March, 1867, this alleged entry made in May, 1865, did not appear to have *attached* to the land so as to except it from the grant. And this would seem to be in accordance with the charge to the jury in *Union Pacific R. Co.* v. *Watts,* 2 Dill. 310.

But a long and almost unbroken series of rulings and holdings by the land department of the United States is to the contrary. They are to the effect that a homestead entry of record, valid upon its face, *per se* constitutes the land thus purporting to be entered land to which it appears that the right of homestead settlement has attached, within the meaning of the various land grants which have been made in aid of the construction of railroads. This result is effected simply by an entry of record, valid upon its face, without reference to the validity of the entry in fact. *Thomas* v. *St. Joseph & D. C. R. Co.,* 2 Copp, Pub. Land Laws, 869; *White* v. *Hastings & D. R. Co.,* Id. 876; *Dalton* v. *Southern Minn. R. Co.,* Id. 861; *Barbeau* v. *Southern Pac.*

*R. Co.,* 9 Copp's Land-owner, 81; *Graham* v. *Hastings & D. R. Co.,* (*this* case,) Id. 236; *Whitney* v. *Maxwell,* 10 Copp's Land-owner, 104; *St. Paul, M. & M. Ry. Co.* v. *Rouse,* Id. 215; *Hastings & D. R. Co.* v. *United States,* 11 Copp's Land-owner, 172; *Southern Minn. Ry. Extension Co.* v. *Gallipean,* Id. 264; *St. Paul, M. & M. Ry. Co.* v. *Forseth,* 12 Copp's Land-owner, 39; *United States* v. *Union Pac. R. Co.,* Id. 161; *Murphy* v. *Howe,* Id. 168; *Chicago, R. I. & P. R. Co.* v. *Easton,* Id. 259; *Hamilton* v. *Northern Pac. R. Co.,* Id. 277.

We have spoken of this series of rulings by the general land department of the United States as almost unbroken. If some rulings made in such cases as *Kniskern* v. *Hastings & D. R. Co.,* 2 Copp's Pub. Land Laws, 858, and *Larson* v. *St. Paul & P. R. Co.,* Id. 862, and possibly some earlier cases, are to be regarded as inconsistent with these, (as is not altogether clear,) they must be treated as overruled by the later holdings above cited. The act of congress of June 8, 1872, (U. S. Rev. St. § 2308,) evidently rests upon the propriety of a construction of the law like that given by the land department.

As to the weight to which the practical construction thus given to the land laws is entitled, we quote, as fully applicable to this case, what is said by the supreme court of the United States in *United States* v. *Burlington, etc., R. Co.,* 98 U. S. 334, 341, cited in *Kansas Pacific R. Co.* v. *Atchison, etc., R. Co.,* 112 U. S. 414: "Such has been the uniform construction given to the acts by all departments of the government. Patents have been issued, bonds given, mortgages executed, and legislation had upon this construction. This uniform action is as potential, and as conclusive of the soundness of the construction, as if it had been declared by judicial decision. It cannot, at this day, be called in question." We may add that the cases of *Burlington & M. R. R. Co.* v. *Abink,* 14 Neb. 95; *Atchison, etc., R. Co.* v. *Pracht,* 30 Kan. 66; *Kansas Pacific Ry. Co.* v. *Dunmeyer,* 113 U. S. 629, appear to take or to tend towards the same view of the effect of the land-grant acts upon homestead and pre-emption entries taken by the land department; and the cases of *United States* v. *Union Pac. R. Co.,* 12 Copp's Land-owner, 161, and *Hamilton* v. *Northern Pac. R. Co.,* Id. 277, show that as to the *Dunmeyer Case* this is the understanding of the department itself.

Following the construction of the general land-office in cases of this kind, we are compelled to hold that Turner's entry, being of record and valid upon its face, took the land out of the operation of the grant; and hence the judgment appealed from, which was for plaintiff, is reversed.