## CHARLES A. WEEKS *vs.* COLEMAN BRIDGMAN.

### August 5, 1889.

**Railway Land Grant—Vesting of Title.**—The congressional land-grant act of March 3, 1857, was in itself a grant conveying to the state the legal title of the lands found to fall within its operation. The certification of lands to the state by the secretary of the interior under the law of 1854 did not affect the legal title of such lands.

**Same—Definite Location.**—Only upon the definite location of the lines of railroad referred to in the grant, by filing maps thereof in the department of the interior, did the grant become applicable to particular lands, so as to prevent the acquisition of vested rights by pre-emption, which would prevail notwithstanding the grant.

**Same—Exception—Pre-emption Rights.**—By implication from the terms of the act, lands to which the right of pre-emption should attach before such definite location were excepted from it.

**Same — Application for Pre-emption before Location ·Allowed after Location.**—Before the definite location of one of the land-grant roads, one Brott filed his application to pre-empt certain lands as a mail station under the act of congress of 1855, allowing pre-emptions by certain mail-route contractors. The application was refused by the local officers, and their decision was affirmed upon appeal to the commissioner of the general land-office, upon the sole ground that the mail-route of the applicant was not such as the act of 1855 contemplated. The secretary of the in-

terior, upon appeal to him, reversed the former rulings, and decided that the entry should be allowed, upon proper proofs being made. This was long after the definite location of the road within the limits of whose grant the land was found to be situated. *Held,* that the right of pre-emption attached as early, at least, as the time of the filing of the application, and so the land was excepted from the operation of the granting act of 1857; and subsequent patent to the pre-emptioner (even though not made upon that pre-emption claim) conveyed the title.

**Same—Definite Location.**—A definite location of the road is required to be established in the manner stated, even with respect to land in the vicinity of places named in the granting act as defining the route.

Appeal by defendant from an order of the district court for Stearns county, *Baxter,* J., presiding, refusing a new trial.

*Oscar Taylor* and *Lusk & Bunn,* for appellant.

*M. D. Grover* and *S. L. Campbell,* for respondent.

DICKINSON, J.[1] This is an action under the statute to determine adverse claims to vacant and unoccupied real estate. Both parties claim title,—the plaintiff through the congressional land grant to the territory of Minnesota, March 3, 1857, (11 St. at Large, p. 195,) to aid in the construction of certain railroads; the defendant through one Brott, who is claimed to have made a pre-emption entry of the land prior to the definite location of the road in aid of which the grant of 1857 was made, having the effect to except the land from the operation of that grant. The land was certified to the state by the secretary of the interior in October, 1864, as a part of the grant inuring to it under the act of 1857, and the plaintiff has acquired whatever title or interest the state had under that congressional grant. In 1871, pursuant to the provisions of an act of congress passed for the relief of Brott in 1860, the same land was patented by the United States to him, and this defendant has whatever title or interest Brott acquired thereby.

We will state somewhat more particularly the facts upon which these conflicting claims of title rest: The land is part of an odd-numbered section, (13,) and is within the six-mile limit of the line of road, as definitely located, in aid of which the grant of 1857 was

[1] Collins, J., did not sit in this case.

made, and the title passed to the state unless Brott's pre-emption claim had the effect of excepting this land from the operation of the grant. The line of the railroad—the branch line, extending from St. Anthony to St. Cloud, of the St. Paul & Pacific (the successor of the Minnesota & Pacific) Railroad—was definitely located by the filing of the map of location in the proper department at Washington, December 30, 1857. By an act of congress of March 3, 1855, (10 St. at Large, p. 683,) entitled "An act making appropriations for the service of the post-office department during the fiscal year," etc., it was enacted (§ 1) that "each contractor engaged, or to be engaged, in carrying mails through any of the territories west of the Mississippi, shall have the privilege of occupying stations at the rate of not more than one for every 20 miles of the route on which he carries a mail, and shall have a pre-emptive right therein, when the same shall be brought into market, to the extent of 640 acres to be taken contiguously, and to include his improvement." In September, 1855, Brott entered into a contract with the government to carry the mail from Minneapolis to St. Cloud, from December, 1855, to June, 1858; and he did carry the mail in accordance with that contract. August 11, 1857, Brott filed in the local land-office his application to enter certain described land, embracing that now in controversy, under the act of 1855, above referred to, alleging his settlement upon and improvement of the land as a mail station in January, 1856. The court finds, upon sufficient evidence presented in this case, that Brott did so occupy and improve the land. This application was rejected by the local land-officers, and upon appeal to the commissioner of the general land-office their decision was affirmed, for the reason, as the record evidence discloses, that the mail route covered by Brott's contract was deemed not to be a link in nor part of a connected route from the line of the states west of the Mississippi river to the Pacific ocean, and hence, as was supposed, not such a route as the act of 1855 contemplated. Brott appealed to the secretary of the interior. That officer, in August, 1861, reversed the rulings of the land-officers, and of the commissioner of the general land-office. It was decided that the route was within the terms of the act of 1855, and that Brott's contract entitled him to pre-empt the stations occupied, upon

compliance with the provisions of the law, and that he should therefore be permitted to enter the lands mentioned in his application, with certain exceptions not necessary to be referred to, upon proof of the performance of his contract and of the occupation of the station, and upon compliance with the laws and regulations applicable to the case. Before Brott's appeal was thus finally decided, on May 26, 1860, congress passed an act for the relief of Brott, declaring that he should be allowed to enter the land in question upon payment of the usual minimum price. Brott is found by the courts to have made no further effort to enter the land simply as a mail contractor, but it is found that he did enter the same under the act for his relief above referred to, paid for the same, and in 1871 patent was issued to him, as before stated; it being recited in the patent that the land had previously been erroneously certified to the state. The court concluded, on these facts and others set forth in the findings, which we do not deem material for the decision of this appeal, that the plaintiff was the owner in fee of this land, and entitled to possession. The defendant appealed from an order refusing a new trial.

The sole issue in this action relates to the legal title. The defendant only opposes to the plaintiff's asserted title a denial, and a claim of title in himself. No facts are pleaded which might entitle the defendant to equitable relief, and the decision of the court below is solely upon the issue as to the legal title. We state, without pausing to comment upon, some propositions which must be regarded as having been established by numerous decisions of the supreme court of the United States. The act of March 3, 1857, was in itself a grant, and effectual as such to transfer the title of lands to which it should be found to be applicable; and the certification, in 1864, was only evidence, not conclusive in its character, that the lands so certified had become vested in the state under the grant. The certification transferred no title. *Wright* v. *Roseberry,* 121 U. S. 488, (7 Sup. Ct. Rep. 985;) *Minn. Land Co.* v. *Davis,* 40 Minn. 455, (42 N. W. Rep. 299.) We shall hereafter refer again to this certification. Although this grant was made *in præsenti,* it was only by the definite location of the line of the railroad that it acquired precision and became applicable to particular land, so as to prevent the acquisition of vested

rights by pre-emption which would prevail over those asserted under the prior granting act. The laws relating to pre-emption remained operative until the line of location was definitely fixed, even as to lands which might be found to be within the proper limits of the grant. *Baker* v. *Gee*, 1 Wall. 333; *Leavenworth, etc., R. Co.* v. *U. S.*, 92 U. S. 733; *Missouri, Kansas & Texas Ry. Co.* v. *Kansas Pacific Ry. Co.*, 97 U. S. 491; *Kansas Pacific Ry. Co.* v. *Dunmeyer*, 113 U. S. 629 (5 Sup. Ct. Rep. 566;) *Winona & St. Peter R. Co.* v. *Barney*, 113 U. S. 618, 626, (5 Sup. Ct. Rep. 606.) Such precision was given to the grant, as to lands lying *in place*, by the filing of the proper map of definite location of road in the department of the interior. *Van Wyck* v. *Knevals*, 106 U. S. 360, (1 Sup. Ct. Rep. 336,) and authorities above cited. The act of 1857, after declaring (§ 1) "that there be, and is hereby, granted to the territory * * * every alternate section of land designated by odd numbers, for six sections in width on each side of each of said roads and branches," further provides: "But in case it shall appear that the United States have, when the lines or routes of said roads and branches are definitely fixed, sold any section, or any parts thereof, granted as aforesaid, or that the right of pre-emption has attached to the same, then it shall be lawful," etc.; the act providing for the selection of indemnity lands to an amount "equal to such lands as the United States have sold, or otherwise appropriated, or to which the rights of pre-emption have attached as aforesaid." By implication from the terms of the act, all lands to which the rights of pre-emption should attach before the definite location of the line of the road were reserved from the grant. *Leavenworth, etc., R. Co.* v. *U. S.*, 92 U. S. 733, 748.

We are of the opinion that Brott's pre-emption claim must be regarded as having attached to this land prior to the definite location of the railroad in December, 1857, so that the title did not pass under the congressional grant to the state. The act of 1855 authorized mail contractors upon such routes as were therein referred to, to occupy mail stations upon the public lands, and declared that they should have a right to pre-empt the same. Brott was a contractor, carrying the mail west of the Mississippi river from Minneapolis to St. Cloud. He occupied this land as a mail station on that route prior to the

grant of 1857, and in August, 1857, before the filing of the map of the location of the road, he filed his application for pre-emption in the proper local land-office. If it had been then allowed, there would have been little reason to doubt that his pre-emption right would prevail over any adverse claims under the grant of 1857. But the question whether his claim then attached to this land, so as to except it from the operation of that grant, did not depend upon his claim being allowed before the location of the road became fixed. The laws entitled him, when his claim was disallowed, to invoke by appeal the decision of the commissioner of the general land-office and of the secretary of the interior; and the final decision of this department of the government would be a decision upon the original application filed in August, 1857. It would have the same effect as though it had been made at once upon the filing of the application. The right of pre-emption, if it attached at all, attached as early at least as the filing of the application. The claim was before the department to which the administration of such claims and grants had been by law committed for adjudication, when the land grant of 1857 first acquired precision so as to become applicable to particular lands, and the fact that it was not finally allowed until 1861 did not affect the result. *Newhall* v. *Sanger*, 92 U. S. 761; *Kansas Pacific Ry. Co.* v. *Dunmeyer*, 113 U. S. 629, (5 Sup. Ct. Rep. 566;) *Doolan* v. *Carr*, 125 U. S. 618, (8 Sup. Ct. Rep. 1228.) It is unnecessary to consider whether it would have made any difference if Brott's claim had been finally disallowed. In *Kansas Pacific Ry. Co.* v. *Dunmeyer, supra,* the court says, (113 U. S. 644; 5 Sup. Ct. Rep. 573:) "Of all the words in the English language, this word 'attached' was probably the best that could have been used. It did not mean mere settlement, residence, or cultivation of the land, but it meant a proceeding in the proper land-office, by which the inchoate right to the land was initiated. It meant that by such a proceeding a right of homestead had fastened to that land, which could ripen into a perfect title by future residence and cultivation. With the performance of these conditions the company had nothing to do. The right of the homestead having attached to the land, it was excepted out of the grant as much as if in a deed it had been excluded from the conveyance by metes and bounds." It

is unimportant, as the decisions above cited show, that Brott did not afterwards perfect his title under his original pre-emption claim alone, but availed himself of the right conferred by the congressional act which, pending the decision upon his application, had been passed for his relief.

It is contended that Brott did not comply with the regulations of the land department as to the manner of presenting his claim. It is at least doubtful whether, if such were the fact, that would affect the question under consideration. But it does not appear that such was the case. It is apparent from the record before us that all of the proceedings in the prosecution of this claim are not embodied in this case, and it also appears that the only ground upon which the claim was rejected by the land-officers and the commissioner was that to which we have already referred, their ruling upon which was afterwards reversed. We see no sufficient reason to support the respondent's contention that this pre-emption claim was void upon its face. It may be added that, whatever may be the proper construction of the postal-pre-emption act of 1855, it is to be assumed, at least in the absence of proof, that the facts of the case were such as to justify the decision finally made by the secretary of the interior. It would not necessarily follow, from the fact that Brott's route extended no further than St. Cloud, that the system of which that was a part was not such as to make the act of 1855 properly applicable. We do not mean, however, to intimate that, if all the facts upon which the decision of the secretary of the interior was made were presented in the record of this action, the court would review and redecide as to the validity of Brott's claim.

It was suggested orally, upon the argument before us, that, as St. Cloud was named in the granting act as a point in the route of the railroad, the grant took effect at once as to the land in question, which is within the city of St. Cloud. We think, however, that no such exception should be recognized to the rule which has so long prevailed in the construction of such grants, that the act contemplates a *definite location* of the line of the road, by the action of the state or of the railroad company, before the grant, which is in terms indefinite and a float, shall be deemed to attach to particular lands,

and the operation of the pre-emption laws as to such lands cease. The language of the act which we have recited—"in case it shall appear * * * when the lines or routes * * * are definitely fixed"—justifies the rule of construction which has long been adhered to in the administration of such grants and in the decisions of the courts, without, so far as we know, any such modification as is now suggested.

We have already said that the certification of this land to the state was not effectual to transfer the title. We suppose this certification to have been made under the act of August 3, 1854, (10 U. S. St. at Large, p. 346,) entitled "An act to vest in the several states and territories the title in fee of the lands which have been or may be certified to them." It provides "that in all cases where lands have been, or shall hereafter be, granted by any law of congress to any one of the several states or territories, and where said law does not convey the fee-simple title of such lands, or require patents to be issued therefor, the list of such lands which may have been, or may hereafter be, certified * * * shall be regarded as conveying the fee-simple of all the lands embraced in such lists that are of the character contemplated by such act of congress, and intended to be granted thereby; but where lands embraced in such lists are not of the character embraced by such acts of congress, and are not intended to be granted thereby, said lists, so far as these lands are concerned, shall be perfectly null and void, and no right, title, claim, or interest shall be conveyed thereby." The certificate of these lands did not affect the title, for the reason that the granting act did, by its own force, convey the title of all lands to which it was applicable. Furthermore, Brott's pre-emption right having attached before the location of the road, as it was contemplated such rights might attach, the land cannot be deemed to have been intended to pass to the state by the grant.

We do not deem it necessary to consider whether, by Brott's occupation of the land prior to the enactment of the granting act of 1857, as a mail station pursuant to the act of 1855, he acquired such a right of pre-emption as would bring the case within the proviso of the grant of 1857, excepting from its operation "all lands heretofore

reserved to the United States by any act of congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatsoever."

Order reversed.

