ST. PAUL & SIOUX CITY RAILROAD COMPANY *vs.* ELIZABETH WARD and Husband.

July 28, 1891.

**Railway Land Grant — Definite Location of Line.** — Under the congressional land grant act of March 3, 1857, the line or route of the plaintiff's railway could only become definitely fixed, so as to prevent preemption and homestead rights from attaching to particular tracts, by filing the map of such line or route with the secretary of the interior.

**Same — Indemnity Lands — Right to Select.** — As respects indemnity lands, the right to make selections did not accrue to the railway company till that date.

**Same — Homestead Right Existing at Date of Filing Map.** — And where a valid homestead right has so attached, and the occupant has in all things complied with the provisions of the homestead law, he will be deemed to have acquired vested rights in the tract so occupied, which the courts will recognize and protect upon the final refusal of the land department to allow him to enter the land. Upon making his final proof in due form, his right to the land becomes complete, and the naked legal title held by the United States or its assignee is insufficient to warrant a judgment in ejectment against him.

**Same — Withdrawal Inoperative as to Lands then Occupied by Pre-Emptors.** — An order of the land department, withdrawing the odd-numbered sections within the indemnity limits, is inoperative as respects lands then occupied and claimed by a qualified pre-emptor. Such lands are not affected by the withdrawal, so that, if subsequently abandoned, they will, until a selection made by the railway company, be deemed still open for homestead settlement.

**Same — Rulings of Interior Department to be Followed.** — The construction placed by the department upon its orders of withdrawal are entitled to great respect, and, unless clearly unreasonable, or violative of some legal principle, should be adopted and followed by the courts. Following *Hastings & Dakota Ry. Co.* v. *Whitney*, 34 Minn. 538.

Action brought in the district court for Blue Earth county, to recover possession of a quarter-section of land in that county. The defendants, in their answer, among other things, alleged facts (recited

in the opinion) showing title in defendant Elizabeth. The action was tried by *Severance*, J., who ordered judgment for defendants, which was entered, and the plaintiff appealed.

*W. H. Norris*, for appellant.

*E. P. Freeman*, for respondents.

VANDERBURGH, J.[1] The action concerns the title to a quarter-section of land lying within the indemnity limits of the plaintiff's land grant. The general land-grant act of March 3, 1857, (11 U. S. St. at Large, 195,) among other things, granted to the territory of Minnesota, for the purpose of aiding in the construction of railroads, among others, "from St. Paul and from St. Anthony, via Minneapolis, to a convenient point of junction west of the, Mississippi, to the southern boundary of the territory, in the direction of the mouth of the Big Sioux river," every alternate section of land designated by odd numbers for six sections in width on each side of said road; but in case it should appear that the United States have, when the line or route of said road was definitely fixed, sold any sections, or any part thereof, granted as aforesaid, or that the right of pre-emption has attached to the same, "then it shall be lawful for any agent or agents to be appointed by the governor of said territory or future state, to select, subject to the approval of the secretary of the interior, from the lands of the United States nearest to the tiers of sections above specified. so much land in alternate sections or parts of sections as shall be equal to such lands as the United States have sold or otherwise appropriated, or to which the rights of pre-emption have attached as aforesaid; which lands, thus selected in lieu of those sold and to which pre-emption rights have attached as aforesaid, together with the sections and parts of sections designated by odd numbers as aforesaid, and appropriated as aforesaid, shall be held by the territory or future state of Minnesota for the use and purpose aforesaid : *provided*, that the land to be so located shall in no case be further than fifteen miles from the line of said road." And thereafter, by an act approved May 22, 1857, the legislature conferred the rights and privileges granted as aforesaid upon the Southern Minnesota Railroad Com-

[1] Mitchell, J., took no part in this decision.

pany, of which the plaintiff is the lawful successor. The question to be determined here is whether the plaintiff is entitled to the premises in question as a part of its indemnity lands by virtue of its land grant, as against the title of a homestead claimant and settler, who was the grantor of the defendants.

The evidence is not before us, and the case is to be determined upon the findings of the trial court. From these it appears that "on the 18th day of June, 1857, the railroad of the plaintiff was duly and definitely located opposite and by the land in question, and a map of such location was duly filed in the office of the commissioner of the general land-office on the 10th day of August, 1865, and the same was duly accepted by such commissioner as the final and definite location of said railroad." To supply deficiencies in place lands, and as provided by the land-grant act, indemnity lands were selected by the proper authority, including the land in question, in August, 1871, and the selections were thereafter duly approved in March, 1872, and certified by the secretary of the interior to the state of Minnesota, "subject to any intervening rights which might exist to any of the tracts embraced in the list as having inured to said grant by virtue of said selection for the benefit of plaintiff's railroad company, and were in form conveyed by the state to the plaintiff on the 7th day of December, 1872."

It is also found that the land in controversy was at all times public land of the United States to and including July 6, 1857, when one Rumrill filed in the local United States land-office a declaratory pre-emption statement, alleging settlement thereon on the 1st day of June, 1857. This was followed by suitable improvements and residence thereon with his family, so that he was thereafter duly entitled to enter the same as a pre-emption claimant, unless the rights of the plaintiff were prior and superior to his. He continued his improvements and residence till in the month of March, 1863, having cultivated and improved 40 acres, and erected a dwelling-house and sheds and stables thereon. At that time he sold out his improvements to one George W. Johnson, and moved away, and the latter immediately moved into the house and settled upon the land with his family, and on the 18th day of March, 1863, duly entered the land as a homestead at the same land-

office, and received the proper homestead application receipt. He was a citizen of the United States, and entitled to make such application. He thereafter continued to occupy the land as his homestead, and to improve the same, till October, 1864, when he entered the military service of the United States, in which he continued till the 10th of March, 1865, when he died. His widow, Drucilla Johnson, continued to reside on and improve the premises during his absence, and subsequent thereto, down to March 9, 1869, when she made her final proof as widow, in all respects sufficient and satisfactory, and on that day received a final duplicate receipt therefor, in due form, which was recorded March 31, 1869, in the office of the register of deeds of the proper county; and she subsequently, for a valuable consideration, conveyed the land to these defendants, who continue to occupy and improve the same. It also appears that the entry of George W. Johnson was cancelled, by order of the commissioner of the general land-office, March 22, 1866. Of this she had no notice, but made her final proof thereunder in 1869, as before stated, which was accepted by the local land-office. Her final entry was also cancelled by the commissioner, June 28, 1870. The homestead entry of George W. Johnson was reinstated by the commissioner of the general land-office in March, 1883, and a patent ordered to issue to Mrs. Johnson on her final proof. This order was in turn reversed by the secretary of the interior, on the ground that the land had been certified to the state, and the jurisdiction of the land department had ceased. No question was made in any of the rulings of the land department as to the sufficiency of the improvements, qualifications of the settlers, or the regularity of the proceedings, but the objections were based solely upon the supposed prior right of the plaintiff to claim this land as a part of its indemnity lands under its grant.

1. As we interpret the findings of the court, the line or route of the road was definitely located by the proper survey in June, 1857, but the map of such location was not filed and accepted, as finally adopted, until August 10, 1865. This last is the date upon which the land grant acquired precision, and "when the line or route of the road became definitely fixed," within the intent and meaning of the act of congress first referred to. *Weeks* v. *Bridgman,* 41 Minn. 352,

(43 N. W. Rep. 81.)   This is the settled rule, as repeatedly declared
by the supreme court of the United States in construing similar lan-
guage in land-grant acts.  *Van Wyck* v. *Knevals,* 106 U. S. 360, (1 Sup.
Ct. Rep. 336;)  *Walden* v. *Knevals,* 114 U. S. 373, (5 Sup. Ct. Rep.
898;)  *Kansas Pacific Ry. Co.* v. *Dunmeyer,* 113 U. S. 629, 635, (5 Sup.
Ct. Rep. 566;)  *Cedar Rapids, etc., R. Co.* v. *Herring,* 110 U. S. 27,
38, (3 Sup. Ct. Rep. 485.)  In *Van Wyck* v. *Knevals* it is said: "Un-
til the map is filed the company is at liberty to adopt such route
as it may deem best after an examination of the ground has dis-
closed the feasibility and advantages of different lines.   But when a
route is adopted by the company, and a map designating it is filed
with the secretary of the interior, and accepted by that officer, the
route is established   *   *   *   and definitely fixed."   And in *Kan-
sas Pacific Ry. Co.* v. *Dunmeyer,* 113 U. S. 629, Justice Miller con-
cedes (p. 635) "that the filing of the map is the act by which the line
of the road is definitely fixed."   Until that was done there could be
no basis for ascertaining the deficiency in the place land, or for any
selections to supply it; and the right to make selections did not ac-
crue till that time, since the lines of the indemnity belt could not be
definitely fixed and known except by that act; and not till actual
selection could the company acquire any right or title to any of the
lieu lands.  *Musser* v. *McRae,* 38 Minn. 409, (38 N. W. Rep. 103,)
and 44 Minn. 343, (46 N. W. Rep. 673;)  *Ryan* v. *Railroad Co.,* 99
U. S. 382;  *Cedar Rapids, etc., R. Co.* v. *Herring,* 110 U. S. 27, 39, (3
Sup. Ct. Rep. 485;)  *St. Paul Railroad* v. *Winona Railroad,* 112 U. S.
720, 731, (5 Sup. Ct. Rep. 334;)  *Vance* v. *Railroad Co.,* (Neb.) 11
N. W. Rep. 334.   In *Weeks* v. *Bridgman,* 41 Minn. 352, (43 N. W.
Rep. 81,) the rule in respect to lands in place is stated to be this:
"The laws relating to pre-emption remained operative until the line
of location was definitely fixed, even as to lands which might be
found within the proper limits of the grant."   And for still stronger
reasons the lieu lands must be deemed to remain open for settle-
ment.   Presumptively, in this instance, the entire grant remained
subject to pre-emption or homestead settlement until the 10th day
of August, 1865, and the indemnity lands were also subject to such
applications thereafter, until duly selected.   The homestead entry

of Johnson was made prior to the date referred to; and, unless the land had been previously withdrawn from entry, he had acquired vested rights of which he could not lawfully be deprived by the land department.

2. It is, however, claimed that the land was withdrawn after the survey and location of the route upon the 18th day of June, 1857. It is intimated that there was a withdrawal of all the odd sections on the 14th day of March, 1857; but there is no evidence of this, and there is no such finding, and there certainly could be no warrant for such withdrawal. But the record shows that the following order was issued by the commissioner of the general land-office on or about the date thereof:

"General Land-Office, March 26, 1858.
"Register and Receiver, Chatfield, Minn.

"Gentlemen: Official notice, under date of the 22d inst., has been given to this office by N. P. Caussin, Esq., agent for Minnesota Territory, of the selection of the odd-numbered sections of land outside of the six and within the fifteen mile limits of the Southern Minnesota Railroad route for the benefit of said road, in pursuance of the provisions of the act of congress of March 3d, 1857. You are therefore hereby instructed not to permit pre-emption declarations to be filed on or entries made of any lands in said sections by virtue of settlements made subsequent to the 22d inst. The even sections alternate to the sections above indicated are still subject to pre-emption at the rate of $1.25 per acre.

"Very respectfully,

"THOS. A. HENDRICKS, Commissioner."

It does not appear, however, that any map of the general route of the road or of the line located in June, 1857, was made and filed, or any record thereof made in the general land-office, prior to August 10, 1865, so as to indicate the lines within which the withdrawal might become operative, or that any specific tract was within the land grant; and it seems to us that it was incumbent on the plaintiff to establish the existence of some such record as a part of its case, in order to give any effect to the withdrawal in this case. But, conceding that there was sufficient evidence before the commissioner to

warrant the exercise of his discretion, and that the order should be treated as a valid executive order, authoritatively issued, it is clear that it did not operate to withdraw the particular tract in question, for a valid pre-emption right had already attached thereto, and it was then claimed and occupied by a qualified pre-emptor, whose declaratory statement had been duly filed. The land was not, therefore, withdrawn by that order. It stood just as if there had been no withdrawal at all, and, being within the indemnity belt, if it became vacant it would be subject to be selected for the plaintiff, unless sooner taken by a settler; but it would be open to the first comer, and when Rumrill relinquished his claim, and sold out his improvements to Johnson, it was open to the latter's homestead entry. This is in conformity with the uniform rulings and construction of the land department of the government extending through many years, as applied to indemnity lands as well as to those in place. The withdrawal in this instance was not required by the act of congress, but was issued by the commissioner, and the construction given by the department to the effect of its own orders in such cases, and not in contravention of any rule of law, is entitled to great respect. And the rule adopted is to construe such orders strictly in favor of the government, that is to say, as operating *in præsenti*, and not *in futuro*, and lands are therefore excluded from a withdrawal as from a grant. It is eminently proper that the courts should place a similar construction upon these orders of the land department. *Hastings & Dakota Ry. Co.* v. *Whitney*, 132 U. S. 357, 366, (10 Sup. Ct. Rep. 112,) affirming 34 Minn. 538, (27 N. W. Rep. 69,) and cases cited. See *Prest* v. *Northern Pacific R. Co.*, 2 Dec. Dep. Int. 506, and cases; *Northern Pacific R.* v. *Waldon,* 7 Dec. Dep. Int. 182.

Upon making her final proof, Drucilla Johnson's right to the land became complete. Her equitable title she then had a right to convey to the defendants, who stand in her shoes. *Lang* v. *Morey,* 40 Minn. 396, (42 N. W. Rep. 88,) and cases cited. It is not material whether the naked legal title is still in the United States or has formally passed to the plaintiff. In either case the plaintiff is not entitled to recover in this action.

Judgment affirmed.