WINONA & ST. PETER LAND CO. *vs.* GEORGE EBILCISOR.

Argued Nov. 3, 1892.  Decided Jan. 16, 1893.

**Former Decision Adhered to.**

> *Minnesota Land & I. Co.* v. *Davis*, 40 Minn. 455, adhered to and followed.

**Exception from Land Grant in Aid of Railroad.**

> An existing homestead entry of particular land at the time of the filing in the general land office of a map of the definite location of a land-grant railroad, under the act of March 3, 1857, excepts such land from the operation of the railroad grant, although the land is found to be within the limits of the grant.

**Certification is as Effectual as a Patent.**

> But a certification of such land to the state under the law of July 13, 1866, as being included in the grant, is effectual as a patent evidencing a transfer of the title.  It is voidable, but not void, and cannot be collaterally assailed by one who has no legal right to the land.

**Certification cannot be Revoked by Land Department.**

> Such a certification of title cannot be rendered void by the act of the officers of the land department of the government, nor by the mere commencing of a suit in equity for its cancellation.

**Certification, Error in.**

> Such a certification held to have the effect above stated, as evidencing the transfer of the title, notwithstanding an erroneous designation therein of the railroad company for the benefit of which the certification was made to the state.

Appeal by plaintiff, the Winona and St. Peter Land Company, from an order of the District Court of Brown County, *Webber*, J., made December 18, 1891, refusing its motion for a new trial.

On May 17, 1864, Hiram W. Locke settled upon and entered at the local U. S. Land Office as a homestead (U. S. R. S. § 2289) the east half of the northeast quarter of section twenty-five, (25,) T. 109, R. 33, in Brown county. He occupied the land as his homestead until June 7, 1867, when he left it and the entry was cancelled by the Commissioner of the General Land Office. On July 2, 1871, the defendant, George Ebilcisor, settled upon and entered the land at the local U. S. Land Office as a pre-emption, (U. S. R. S. § 2257,) and he has ever since resided thereon and complied with all the requirements of the Federal laws, relating to pre-emptions of the public domain; but in May, 1872, his pre-emption entry was cancelled.

By the Act of March 3, 1857, (11 U. S. Stat. 195,) there was granted to the then Territory of Minnesota, to aid in the construction of a railroad from Winona westerly by the way of St. Peter to the Big Sioux River, south of the forty-fifth parallel of north latitude, every odd-numbered section of land for six sections in width on each side of the line of the railroad which the United States should own at the time the line of the road should be definitely located. But in case it should appear that the United States had, when the line or route of the road should be definitely fixed, sold, or that the right of pre-emption had attached, to any sections or parts of sections, such sections, or parts of sections, were excepted from the grant and other lands were to be selected in their place.

The map of the definite location of the road past this land was filed in the General Land Office at Washington, D. C., on August 3, 1864, and the right of the Railroad Company attached on that date. Afterwards on August 14, 1874, the Commissioner of the General Land Office certified this and other lands to the State of Minnesota as a part of the grant, subject to the conditions of the Act, and to any valid intervening rights to any of the lands so certified. On February 16, 1881, the Governor of this State granted the land to the Winona and St. Peter Railroad Company. The Railroad Com-

pany, on November 28, 1887, conveyed the land to the Winona and
St. Peter Land Company.

On March 3, 1887, Congress passed an Act (24 U. S. Stat. p. 556)
providing for the adjustment of land grants in aid of the construc-
tion of railroads.   Under it the Secretary of the Interior decided that
this land had been erroneously certified to the State, and an action
was instituted to cancel the certificate, which action is still pending.
In the certificate of August 14, 1874, the Commissioner of the Gen-
eral Land Office erroneously stated that this land was certified to the
State for the benefit of the St. Paul and Sioux City Railroad Com-
pany, instead of for the Winona and St. Peter Railroad Company.
Other facts appear in the opinion.

This action was commenced April 18, 1890, by the Land Company
to eject Ebilcisor from this eighty acres.   The issues were tried June
23, 1891, before the court without a jury.   Findings were made that
plaintiff had no right or title to, or interest in the land, and direct-
ing judgment accordingly.   Plaintiff moved for a new trial, and
being denied, appeals.

*J. A. Tawney* and *H. M. Lamberton*, for appellant.

Plaintiff was *prima facie* the owner of the land; the source of its
title was the certificate from the Secretary of the Interior, having
the force and effect of a patent.   The defendant has no right, title
or interest in the land, but is a trespasser thereon.   He cannot as-
sail plaintiff's title collaterally on the ground that the government
erroneously certified the land to the State, and now desires and is
trying to cancel the certificate.   Until set aside in a direct proceed-
ing brought in the courts for that purpose, the certificate, not being
void upon its face, is effective and valid as to all the world.   Locke's
settlement on the land in 1864 may have been a valid reason for a
refusal by the United States to certify this land to the State.   It may
have been erroneously certified, but until that certificate is cancelled
by the judgment of a competent court, it is evidence of a legal title
in plaintiff, which defendant cannot assail in this action of eject-
ment, to which the United States is not a party.   *Minnesota Land
& I. Co.* v. *Davis.* 40 Minn. 455; *Iron Silver Mining Co.* v. *Camp-*

*bell,* 135 U. S. 286; *Ferry* v. *Street,* 4 Utah, 521; *Carson* v. *Railsback,* 3 Wash. Terr. 168; *Gibson* v. *Chouteau,* 13 Wall. 92; *Field* v. *Seabury,* 19 How. 323; *Steele* v. *Smelting Co.,* 106 U. S. 447; *Fenn* v. *Holme,* 21 How. 481; *Singleton* v. *Touchard,* 1 Black, 342.

Under the homestead law the entry-man must be the head of a family, or if not, must be twenty-one years of age; he must be a citizen of the United States, or if not, must have declared his intention to become a citizen; he must be one who has not had prior benefit of the Act. (U. S. R. S. §§ 2289–2298.) He must personally appear at the land office and make an application to the Register of the land office to enter the land, and must make and file an affidavit containing certain statements, and must pay $5 when he enters eighty acres.

The evidence fails to show a compliance by Locke with the statute in these respects. It is absolutely silent on each and every essential requisite. An exact and technical compliance is perhaps not necessary, but the evidence should show a substantial compliance. If the papers existed which showed a right in Locke, they should have been produced, or if lost, that fact could have been proven, and secondary evidence of their contents could have been offered. But merely offering the memoranda of certain entries made by the Register, or by some clerk, in certain books in the land office, is not, and cannot, under the law, be held competent to prove independent facts, the existence of which is shown by such memoranda. Such entries are not competent to prove the contents of papers, which the statute above referred to requires to be filed in the land office, any more than the reception book in the office of the Register of Deeds would be competent to prove the contents of deeds or mortgages received for record. *Brown* v. *Corson,* 16 Oreg. 388; *McKenzie* v. *Brandon,* 71 Cal. 209; *Gilson* v. *Robinson,* 68 Cal. 539; *Southern P. R. Co.* v. *Purcell,* 77 Cal. 69; *Lee Doon* v. *Tesh,* 68 Cal. 43.

The claimant must set forth in his pleadings and show by his proofs that Locke complied with the law and by such compliance was entitled to an entry. If he fail to do this he can have no help from the courts. *Maxwell Land-Grant Case,* 121 U. S. 325; *Atlantic Delaine Co.* v. *James,* 94 U. S. 207; *Colorado Coal & Iron Co.* v. *United*

*States,* 123 U. S. 307; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273.

Conceding that Locke made a homestead entry on May 17, 1864, would such homestead entry except the land from the operation of the grant? This question has never been decided by this court or by any court of last resort. By the express terms of this act, the only odd sections excepted from its operation, and to which the rights of the company did not attach, were those previously sold by the United States or those to which the right of pre-emption had attached. *Winona & St. P. R. Co.* v. *Barney,* 113 U. S. 618.

*Lind & Hagberg* and *Geo. W. Somerville,* for respondent.

The plaintiff, to prove its title, offered in evidence a list of lands certified to it by the State Auditor, under 1878 G. S. ch. 73, § 65. But the certificate does not comply with the requirements of the statute. It does not purport to show that the lands referred to, were certified by the General Government for the benefit of the Winona and St. Peter Railroad Company. Lands are certified by the Secretary of the Interior for the particular road in aid of which they are granted, and from time to time as the construction of such road progresses. They can only be deeded by the State to the particular road for which they are granted, and to no other.

The Auditor's list was only *prima facie* evidence of title in the Winona and St. Peter Railroad Company. When it appeared by the pleadings and evidence that there was no title in fact, then the *prima facie* character of the list ceased. The uncontroverted facts, that this land was certified by the General Government to the State for the benefit of the St. Paul & Sioux City Railroad Company, and that that certification has not been cancelled or revoked, necessarily destroy the value of the State Auditor's list as *prima facie* evidence of title in the Winona & St. Peter Railroad Company.

If however the court should hold that the plaintiff in this action has established a paper title by way of certification of the land, from the General Government to the State, and mesne conveyances to itself, then we contend that it is nevertheless competent for Ebilcisor, as a defendant in ejectment, to show by evidence *aliunde,* that

this certification was issued without authority of law, and that it is void and a nullity. *Minnesota Land & I. Co.* v. *Davis*, 40 Minn. 455. This question having been considered and passed upon in that case, we should have some hesitancy in again urging it upon the court were it not for the fact that the highest court in the land in *Doolan* v. *Carr*, 125 U. S. 618, which escaped the attention of both court and counsel in the former case, has settled the question in a manner at variance with the decision of this court in the *Davis Case.* *McKinney* v. *Bode*, 33 Minn. 450; *Parker* v. *Duff*, 47 Cal. 555.

If however the court should adhere to the opinion expressed in the *Davis* case, then we submit that the evidence in this case shows that the Government of the United States has elected not to acquiesce in the void act of its ministerial officers in certifying this tract of land to the State for the Railroad Company. In a direct proceeding by the United States against the Winona & St. Peter Railroad Co. in which the plaintiff appeared as an intervenor, (9 Decisions of the Department of the Interior, 646,) the Secretary of the Interior decided that this tract of land among others had been erroneously certified to the State, and directed the Attorney General to institute the proper proceedings to set aside the certification. A suit has since been instituted and is pending for that purpose. When the Government elected to repudiate the unauthorized acts of its officer and so notified the Railroad Company, such unauthorized act became totally void and the apparent title of the Railroad Company was annulled and the title to the land revested in the Government. The fact that the suit is still pending and undetermined is immaterial. The decree of the court can create no right; it can only declare the rights created by the acts of the parties and existing prior to the commencement of the suit and enforce them by compelling a reconveyance of the apparent title.

The decisions cited in regard to pre-emption filings have no bearing upon the question discussed. A pre-emption filing until consummated by proof and payment for the land is a mere license for the settler to enter upon, and occupy the same. A homestead entry is a grant. The distinction between the two classes of entries is stated in *Red River & L. W. R. Co.* v. *Sture*, 32 Minn. 95.

.It was incumbent upon the defendant to prove the existence of a homestead entry of record at the time of the permanent location of the grant. This he did. It is the duty of the Register of the land office to note all homestead applications on the Tract Books and also to keep a register of homestead entries. U. S. R. S. § 2395. Ebilcisor introduced these records in evidence. They are not only sufficient, but the best and only evidence to establish the existence of a homestead entry on the land in question. 1 Greenleaf, Ev. 493.

The permanent location of the route is fixed by the filing of the map in the General Land Office. A homestead entry is embraced within the class of lands excepted from the operation of the Act of 1857. *St. Paul & Sioux City R. Co.* v. *Ward,* 47 Minn. 40.

DICKINSON, J. This is an action of ejectment. It was tried by the court without a jury, and upon the facts found it was considered that the plaintiff was not entitled to recover. Attention should be directed to the following facts found by the court:

The plaintiff's asserted title is derived through (1) the act of congress of March 3, 1857, making a grant of lands to the territory of Minnesota to aid in the construction of certain lines of railroad, including that of the present Winona & St. Peter Railroad Company; (2) the definite location of the line of that road, August 3, 1864, by the filing of its map of location in the general land office at Washington, which showed the land in question to be within the six-mile limits of the road, and hence (being in an odd-numbered section) within the terms of the grant, if not then otherwise appropriated; (3) a certification of this with other land to the state in August, 1874, in terms for the benefit of the St. Paul & Sioux City Railroad Company, which was also one of the roads to aid in the construction of which lands were granted by said act of congress, although this land was not within the place limits of the grant made for the benefit of. the latter road; (4) a deed of conveyance of this land from the state to the Winona & St. Peter Railroad Company in February, 1881; and (5) a deed of conveyance of the same land by the latter company to the plaintiff.

It, however, further appears that in May, 1864, before the definite location of the line of the Winona & St. Peter Railroad, one Locke duly made a homestead entry on this land, under the homestead act of congress of 1862, and he continued to occupy the land under such entry until June, 1867, when his entry was canceled by the commissioner of the general land office. Thereafter, in July, 1871, the defendant in due form of law entered this land as a pre-emption claim, and received the usual certificate thereof. He has ever since continued to reside on the land, and has made valuable improvements thereon. But in May, 1872, such pre-emption entry was canceled by the commissioner of the general land office for the reason that the land was considered to be within the grant made in aid of the Winona & St. Peter Railroad.

After this action had been commenced, upon an application to the secretary of the interior to secure a cancellation of the erroneous certification of this and other lands to the state as falling within the railroad grant, which application was made pursuant to an act of congress "to provide for the adjustment of land grants made by congress to aid in the construction of railroads, and for the forfeiture of unearned lands, and for other purposes," approved March 3, 1887, (24 U. S. Stat. § 556,) the secretary of the interior decided (Dec. 26, 1889, 9 Dec. Dep. Int. 649) that this land had been erroneously and without authority of law certified to the state. The court finds that in and by such decision the secretary of the interior demanded of the railroad company a reconveyance of the land, which being refused, the attorney general of the United States in June, 1891, instituted an action in the circuit court of the United States to cancel the erroneous certification, which action is still pending.

As conclusions of law the court found (1) that the defendant had no right, interest, or estate in the land, but was a trespasser thereon; and (2) that by reason of the homestead entry of Locke at the time of the filing of the map of the location of the railroad line the grant of 1857 did not attach to this land, and the certification of the same to the state was unauthorized, so that the state thereby acquired only a voidable title; but (3) that the proceedings taken since the commencement of this action (the decision of the secretary of

the interior upon the application for the cancellation of such certification, and the instituting of the suit for the same purpose in the circuit court) rendered totally void the unauthorized certification, so that neither the state nor those claiming through or under the state, including the plaintiff, have any right, title, estate or interest in the land.   Hence it was considered that the plaintiff should not recover.

The principal question presented on this appeal is as to the legal effect of the certification of the land to the state by the secretary of the interior, as being embraced in the grant of 1857.   Was this proceeding, under the circumstances stated, *void* for want of jurisdiction, or was it only voidable, but still effectual to convey, or as conclusive evidence of a conveyance of, the legal title from the United States to the state.   This is not a new question in this court.   It was presented and decided in the case of *Minnesota Land & I. Co.* v. *Davis*, 40 Minn. 455, (42 N. W. Rep. 299,) presented at the April term in 1889, upon a state of facts substantially the same as those now before us.   It was there decided that, even though the existence of a homestead right in a particular tract of land at the time when the line of the road became definitely fixed had the effect to except such land from the operation of the prior grant, nevertheless the certification of such land to the state under the congressional act of July 13, 1866, (14 U. S. Stat. 97,) had the force and effect of a patent, constituting evidence conclusive in its nature, as to one having no interest in the land, that the land was within the congressional grant, so that the title had thereby passed from the United States to the state.   The effect of the decision is that the certification, even though erroneous by reason of the existence of a homestead entry which would have the effect to withdraw the land from the operation of the grant, is not void, but only voidable at the suit of one who, having the right to do so, may take proper steps to avoid it.

It is conceded by the respondent that the decision just cited is decisive against his contention that the certification was void, and he invokes a further consideration of the question only because of the fact that, as he thinks, the effect of a late decision of the Supreme Court of the United States, *Doolan* v. *Carr*, 125 U. S. 618, (8 Sup. Ct. Rep. 1228,) is that such certifications of lands, which lands in

fact were not within the operation of the grant, are void, and not merely voidable, so that a plaintiff in ejectment, who shows no title except such as is evidenced by such a void patent, cannot recover, even against a trespasser in possession.   While the case of *Doolan* v. *Carr* had been decided when the *Davis* case was presented in this court, it was not referred to by counsel, nor was our attention directed particularly to it.   But, after a careful consideration of that decision, we do not understand it as deciding the point here involved contrary to what was decided in the *Davis* case, in which case we ruled as we then supposed, and as we still believe, in accordance with the trend of the decisions of the Supreme Court of the United States.   The facts of the case of *Doolan* v. *Carr* are distinguishable from those in the *Davis* case and in the case now before us.   In the former case the land in controversy was claimed by the plaintiff under a patent from the United States to the Central Pacific Railroad Company purporting to have been issued under congressional grants made as late as 1862.   The validity of this patent was drawn in question by evidence offered on the part of the defendant going to show that the land was embraced within the limits of a Mexican grant made to certain individuals as early as 1840, and which at the time of the congressional grant made to aid in the construction of the Pacific Railroad, as well as when its line was definitely fixed, was in process of adjustment ("*sub judice*") pursuant to the act of congress of March 3, 1851, ("An act to ascertain and settle the private land claims in the state of California," 9 U. S. Stat. 631.)   It was considered, as we understand the decision, that such lands were not "public lands" of the United States, and were not included in the grant made for the benefit of the railroad; and that the patent therefor to the railroad company was void (if the facts were as the offered evidence would have shown) for the reason that the subject-matter —the lands embraced in the Mexican grant—was not, and never had been, within the scope of the jurisdiction of the officers of the government, the validity of whose acts was called in question.   As is said by the court, the patent was "void for want of power in them to act on the subject-matter of the patent."   The scope and effect of that decision, as we understand it, as well as the reason upon which it

is founded, are more clearly apparent by reference to *Beard* v. *Federy*, 3 Wall. 478, and *Newhall* v. *Sanger*, 92 U. S. 761, cited in *Doolan* v. *Carr*. The treaty of February 2, 1848, (Guadaloupe Hidalgo,) by which Mexico ceded to the United States the territory comprising the present state of California, respected private property. It was not intended that grants theretofore made by the Mexican government should be impaired, or that the lands granted should, by our acquisition of the new territory, become public property of the United States. But many of these grants had been so made that some proceedings were necessary to locate or define and make certain the lands to pass under the grants. For this purpose, or, in brief, as expressed in the law, "for the purpose of ascertaining and settling private land claims in the state of California," the act of 1851 was passed. This provided for the appointment of commissioners as a board, to which all claims of title derived from the Spanish or Mexican governments should be presented for adjudication, with the right of appeal therefrom to the District Court of the United States, and ultimately to the Supreme Court. For all claims finally confirmed in the course of such proceedings patents were to be issued upon presentation to the general land office of a certificate of such confirmation, and a certified plat or survey of the land. All lands, the claims to which should be finally rejected or held invalid in such proceedings, or as to which no claims should be presented within a time limited, were to be considered a part of the public domain of the United States.

The Mexican grant, under which the defendant in *Doolan* v. *Carr* claimed title adverse to the patent issued in the course of the administration in the general land office of the railroad land grant, fell within the operation of this law. It will be seen from the foregoing sketch of the law that the land embraced in the Mexican grant was never deemed or treated as a part of the public domain; that the land department of the government had nothing to do with it until the rights of claimants and of the United States had been finally determined by another tribunal, which alone had jurisdiction to act in the premises. Hence it was held that the patent issued in the course of the adjustment of the railroad land grant was void for want of jurisdiction over the lands embraced in the Mexican grant. We do not re-

gard the decision as controlling the question now before us, even if it has any bearing upon it.

It is hardly necessary to advert to the feature of this case which distinguishes it from that just referred to, and which is the very basis of our decision in the case of *Davis,* and which also is fully recognized in the decisions of the supreme court of the United States. See *Johnson* v. *Towsley,* 13 Wall. 72; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Ehrhardt* v. *Hogaboom,* 115 U. S. 67, (5 Sup. Ct. Rep. 1157;) *Wright* v. *Roseberry,* 121 U. S. 488, (7 Sup. Ct. Rep. 985,) and cases cited. It *was* within the jurisdiction of the land department of the government—a part of its duty—to adjust the land grant made to the state to aid in the construction of the railroad, within the limits of which grant this land is found to lie, as well as to administer the laws relating to pre-emption and homestead claims. It was required to determine whether lands upon which homestead or pre-emption filings were sought to be made were subject to be so appropriated; to decide conflicting claims of the railroad company and the homestead or pre-emption settler; to certify to the state, under the law of 1866, the lands found to be within the operation of the railroad grant, and to patent to the homestead settler or pre-emptioner the land to which he should become entitled under the laws. And while, in the discharge of these duties, the officers of the government might err, either in the determination of matters of fact or in respect to the law, as any tribunal may, such error would not render their action and final determination void and of no legal effect. See authorities last cited. It would require very clear and satisfactory reasons to justify a holding that the patents issued to homestead settlers and pre-emptioners along all the lines of the numerous railroads in aid of which grants of lands have been made are absolutely void, although long acquiesced in, if it could be shown that the railroad had originally the superior right to the land. Neither ought it to be held, except upon clear reasons, or on authority which is conclusive, that the patents and legal certificates of land to the state in aid of railroads, and in reliance upon which, as evidencing legal and perfect titles, thousands of farms and homes have been bought and are held, are wholly void, although long acquiesced in, if it can only be shown that

some homestead or pre-emption claim, perhaps long since abandoned, attached to the land when the line of railroad was located. Such rulings would go far to defeat the very purpose for which such patents and certifications are authorized; that is, as affording evidence final and conclusive, so far as is consistent with the recognized scope of equity jurisprudence, of title in the patentee. We do not understand that the case of *Doolan* v. *Carr*, or any other decision of the Supreme Court of the United States, is at variance with our decision in the case of *Davis*, which must be accepted as decisive upon the point under consideration. On the contrary, this court is quite in harmony with the decisions of that court in *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, (5 Sup. Ct. Rep. 1157,) and in other cases.

We concur, therefore, in the conclusion of the learned judge of the District Court that the certification to the state, under which the plaintiff claims, was evidence of title, conclusive as to one not entitled to call it in question, although voidable in proper proceedings by reason of the homestead entry of Locke, existing at the time of the filing of the map of location. *St. Paul & S. C. R. Co.* v. *Ward*, 47 Minn. 40, (49 N. W. Rep. 401,) and cases cited; *Bardon* v. *Northern Pac. R. Co.*, 145 U. S. 535, (12 Sup. Ct. Rep. 856.) We may add before leaving this branch of the case that the act of 1866, providing for such certification, did not restrict the effect of the certification as evidence of title as to lands not intended to be granted, as the prior act of 1854 was considered as having done in *Weeks* v. *Bridgman*, 41 Minn. 352, 359, (43 N. W. Rep. 81.)

But the conclusion of the District Court that the acts of the land department upon the application to it for the cancellation of the certification, and the instituting of a suit by the attorney general for that purpose, had the effect to avoid the certification of the title to the state, cannot be sustained. The certification under the law, having the conclusive effect of a patent, could not be avoided by any act of the land department. The officers of that department had no power to annul, avoid, or reinvest in the United States a title which had been effectually conveyed, even though the conveyance were voidable. This principle is recognized in the opinion in *Doolan* v. *Carr*, and is clearly expressed in *Moore* v. *Robbins*, 96 U. S. 530.

See, also, *McKinney* v. *Bode*, 33 Minn. 450, (23 N. W. Rep. 851,) and cases cited.   Nor did the law of 1887, above cited, contemplate the exercise of any such power.   On the contrary, it provided for the proper institution of suits in equity as the means by which erroneous certifications and patents should be avoided.   The decision of the district court in favor of the defendant rested upon the conclusion that the certified title, under which the plaintiff claims, was thus avoided by the action of the department and the institution of a suit for that purpose, which is still pending; and, as we are convinced that this conclusion was erroneous, we must reverse the order appealed from, and grant a new trial.

We think, as the trial court ruled, that the fact of the certification to the state having been made, as expressed therein, for the benefit of the St. Paul & Sioux City Railroad Company, did not prevent the same, and the subsequent conveyance by the state, from having the legal effect which we have ascribed thereto.   The certification purported to be made "in accordance with the requirements of said act of March 3, 1857, subject to all its conditions, and any valid intervening rights which may exist to any of the tracts embraced in the foregoing list."   The certification evidenced the transfer of the legal title to the state, and the state conveyed to the railroad company, (the Winona & St. Peter,) which, as against the other company, (the St. Paul & Sioux City,) was entitled to it, as is established by the findings in this case, and as was considered in *St. Paul & S. C. R. Co.* v. *Winona & St. P. R. Co.*, 112 U. S. 720, 733, (5 Sup. Ct. Rep. 334,) where the naming of the former road as the beneficiary in the certificate is referred to as arising from a manifest mistake in the law on the part of the officers of the land department.

We deem it unnecessary to consider other questions in the case.

Order reversed.

(Opinion published 54 N. W. Rep. 91.)