WINONA & SAINT PETER RAILROAD COMPANY *vs.* SAINT PAUL & SIOUX CITY RAILROAD COMPANY.

August 27, 1880.

**Land-Grant Act—Construction.**—The second section of the act of congress of March 3, 1865, entitled "An act extending the time for the completion of certain railroads in the states of Minnesota and Iowa, and for other purposes," relates only to the lands granted by that act.

**Same—Conflicting Grants.**—Both railroad companies claim under the grant by the act of congress of March 3, 1857, entitled "An act making a grant of land to the territory of Minnesota, in alternate sections, to aid in the construction of certain railroads in said territory, and granting public lands in alternate sections to the state of Alabama, to aid in the construction of a certain railroad in said state," and the defendant company claims part of the lands under a congressional grant of 1864. The line of defendant was located through the territory where the lands in controversy lie in 1859; the line of plaintiff in 1868. No valid selection of lands for indemnity purposes was made till 1872, when defendant first selected the lands in controversy for such purposes, and they were certified by the secretary of the interior to the state for defendant's line. *Held*, that the lands within the six-mile limits of plaintiff, and between the six and the fifteen-mile limits of the defendant, belong to plaintiff. The lands lying between plaintiff's six-mile and fifteen-mile limits, and between defendant's fifteen-mile and twenty-mile limits, belong to plaintiff. The lands lying between the six-mile and fifteen-mile limits of each company belong to both companies in common.

**Orders not affecting Merits.**—Orders and rulings of the court below, not prejudicial to the merits of the case, disregarded.

Plaintiff brought this action in the district court for Watonwan county, to restrain the defendant railroad company from applying for or receiving from the governor of the state any deed or conveyance of certain lands described in the complaint, the plaintiff also demanding to be adjudged the owner of the lands.

. The plaintiff, as successor to the rights of the Transit Railroad Company, claims the lands under the act of congress, approved March 3, 1857, entitled "An act making a grant of lands to the territory of Minnesota, in alternate sections, to aid in the construction of certain railroads in said territory,

and granting public lands, in alternate sections, to the state of Alabama, to aid in the construction of a certain railroad in that state," (11 U. S. St. at Large, 195,) and under the act of the legislative assembly of the territory of Minnesota, approved May 22, 1857, to execute the trust created by said act of congress; (Laws 1857, ex. sess. *c.* 1;) and under the act of congress, approved March 3, 1865, entitled "An act extending the time for the completion of certain land-grant railroads in the states of Minnesota and Iowa, and for other purposes;" (13 U. S. St. at Large, 526;) and the act of congress, approved July 13, 1866, entitled "An act relating to lands granted to the state of Minnesota, to aid in constructing railroads, (14 U. S. St. at Large, 97,) and several acts of the state legislature.

The defendant, as successor of the Root River Valley & Southern Minnesota Railroad Company, in respect to one of the lines of that company and the lands and franchises appertaining thereto, claims the lands under the above-mentioned acts of 1857, and also under the act of Congress, approved May 12, 1864, entitled "An act for a grant of lands to the state of Iowa, in alternate sections, to aid in the construction of a railroad in said state." 13 U. S. St. at Large, 72.

Under the act of congress of 1857 and the territorial act of the same year, there was granted to the Transit Railroad Company, (to whose rights the plaintiff has succeeded,) to aid in the construction of its railroad from Winona westerly by way of St. Peter to a point on the Big Sioux river south of the 45th parallel of north latitude, every alternate section of land, designated by odd numbers, for six sections in width, on each side of said road, with a provision for supplying deficiencies in the lands in place by selections of other lands within fifteen miles of the road. By the act of congress of 1865, the grant was increased from six sections to ten sections per mile, and the limits for selection of indemnity lands were enlarged from fifteen miles to twenty miles.

9

By the same congressional and territorial acts of 1857, a grant precisely the same in its extent and conditions with that to the Transit Railroad Company was made to the Root River Valley & Southern Minnesota Railroad Company to aid in the construction of its railroad from St. Paul, and from St. Anthony *via* Minneapolis, to a point of junction at Shakopee in Scott county, and thence *via* St. Peter to the southern boundary of the territory, in the direction of the mouth of the Big Sioux river. By the congressional act of May 12, 1864, above-mentioned, and an act of the legislature of March 2, 1865, (Laws 1865, c. 15,) there was granted to the Minnesota Valley Railroad Company, (which had succeeded to the rights of the Root River Valley & Southern Minnesota Railroad Company,) to aid in the construction of the above-described road, four additional sections per mile, to be selected under the same conditions as in the original act of 1857: "*provided*, that the land so to be located by virtue of this section may be selected within twenty miles of the line of said road." The defendant is the same company as the Minnesota Valley Railroad Company, the change of name having been made under authority of an act of the legislature.

The plaintiff's and defendant's lines cross each other at St. Peter, beyond which point the lands in controversy are situated. The defendant located its line past these lands in 1859, the plaintiff in 1868. The first selection of them was made in 1872, for the defendant, and they were certified to the state for its line. The situation of the lands, in respect to their distance from the lines of the respective parties, is stated in the opinion.

The action was tried in Blue Earth county, by *Dickinson*, J., upon whose findings a judgment was entered for plaintiff, and the defendant appealed. The case was argued at the April term, 1879, and, by order of the court, was reargued at the April term, 1880.

*E. C. Palmer*, for appellant.

*Thomas Wilson*, for respondent.

GILFILLAN, C. J.   The defendant makes a great many exceptions to orders and rulings of the court below on matters of practice or upon evidence offered at the trial.   We see none that affect the material facts of the case, and as it is evident that these orders and rulings did not prejudice the defendant in any way, we pass over them and come to the merits.   Defendant claims that the act of March 3, 1865, (13 U. S. St. at Large, 526,) increasing the grant for the lines mentioned in the act of March 3, 1857, (11 U. S. St. at Large, 195,) from six to ten sections per mile, also changed that act so that no land can become attached to the grant until it shall be indicated for the particular line by the secretary of the interior, and that, as none of these lands have been so indicated for the plaintiff's line, none of them have become subject to its grant.   We think section 2 of the act of 1865, which is claimed to have this effect, relates only to the selection of lands granted by that act, and was not intended to take away the company's right to ascertain and identify the lands granted by the act of 1857, in the mode in that act prescribed.

The lands in controversy were all certified by the secretary of interior for the line of the defendant.   The defendant's line was located through the territory where the lands in controversy lie, in 1859; the plaintiff's, in 1868.   Until 1872 there was no selection of indemnity lands through this territory on behalf of either line.   They were then selected first on behalf of defendant's line.   What is claimed as a selection in 1858 had no validity, for it does not appear ever to have been communicated or known to, or approved or acted on as a selection by, the secretary of the interior. As found by the court below, the lands in controversy may, for the decision of the case, be divided into four classes: *First,* those lying without the six, but within the fifteen-mile limits of defendant, and within the six-mile limits of plaintiff; *second,* those lying without the six-mile limits of each company, within the fifteen-mile limits of plaintiff, and with-

out the fifteen, but within the twenty-mile, limits of defendant; *third*, the south half of the south half of section 3, town 107, range 35, which lies without the six, but within the fifteen-mile limits of each line; *fourth*, the north-east quarter of section 17, town 107, range 40, which lies without the fifteen-mile limits of each line, but within the twenty-mile limits of defendant's line.

As to the first of these classes—to wit, the lands within plaintiff's six-mile limits—the members of the court are agreed in the result, to wit, that plaintiff is entitled to them, but arrive at such result upon diverse reasons. As to the second class, plaintiff's claim to them, under the grant of 1857, is superior to defendant's claim under the grant of 1864, (and it has no other claim to them,) and the plaintiff is entitled to them. As to the third class, the majority of the court are of opinion that the rights of the plaintiff and defendant are equal, and they are entitled to hold the land in that class in common. As to the land in the fourth class, the defendant is entitled to it. The result as to all accords with the decision of the court below.

Judgment affirmed.