THE B. & M. R. R. Co., APPELLANT, v. GERRIT ABINK, APPELLEE.

**Railroad Land Grant.** The word "claim," in section 19 of the act of Congress granting lands to the Burlington and Missouri Railroad Company, approved July 2d, 1864, is not restricted to such claims as shall afterwards ripen into perfect titles, but includes all that are made in due form, whether they are afterwards either perfected, abandoned, or forfeited, or not.

APPEAL from the district court of Lancaster county. Tried below before POUND, J. It was an action of ejectment brought by the railroad, their title being derived by patent from U. S. Government, of date June 28, 1875. Defendant claimed by virtue of pre-emption entry made by Daniel Doyle, Nov. 5, 1864, and from whom, the same having passed through several hands, the defendant finally acquired the improvements, and in 1872 homesteaded the land.

*Marquett & Deweese,* for appellant, cited: *Fenwick v. Gill,* 38 Mo., 510. *Quinn v. Kenyon,* 38 Cal., 499. *Moore v. Robins,* 96 U. S., 530. *Marquez v. Frisbie,* 101

Id., 476.    *Frisbie v. Whitney,* 9 Wallace, 191.    *Flint v. Gordon,* 41 Mich., 430.

*Brown & Ryan,* for appellee, cited: *Leavenworth v. United States,* 92 U. S., 733.    Copp's Land Laws, 392. *Newhall v. Sanger,* 92 U. S., 761.    *Atherton v. Fowler,* 96 Id., 513.

LAKE, CH. J.

This is an appeal from the district court for Lancaster county.    The controlling question is whether or not, at the time of the definite location of the plaintiff's road, a pre-emption "claim" had "attached" to the land in controversy.

The line of the road was definitely fixed June 15th, 1865. Of this fact there is no dispute.    If at this time the land were within the operation of the grant to the plaintiff, as declared and limited by section 19 of the act of congress approved July 2d, 1864 (13 U. S. Statutes at Large, 364), then the judgment of the district court should be reversed, but, otherwise, not.

The decision of the principal question must necessarily turn upon the true meaning of the word "claim," in this clause of said section; "and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed."    If by the use of this word congress intended that such an interest must have attached as should afterwards ripen into a perfect title or right to a patent from the United States, then the company was entitled to the land, under the grant, for no such claim is shown.

But, on the other hand, if it were intended to include all claims to pre-emption or homestead, formally entered and recognized by the land department, without regard to their continuance, or final perfection, as against the government, then the company was not entitled to the land, for it is

abundantly proved that such a pre-emption claim had attached at the time of the definite location of the line of the road.

We regard the latter of these views as the correct one, and in taking it we believe we are supported by the ruling of the supreme court of the United States upon similar questions, especially by the decision in *Newhall v. Sanger*, 92 U. S., 761, where in construing the word "*claimed*," in a statute which, in terms, excluded from pre-emption and sale all lands claimed under any foreign grant or title, this language was used: "It is said this means lawfully claimed; but there is no authority to import a word into a statute to change its meaning. Congress did not prejudge any claim to be unlawful." See also *Wood v. Railroad Co.*, 104 U. S., 329. So, too, here in the statute we are considering, congress by using the word "claim" simply, not "lawful claim," must have intended it to be taken in its ordinary sense, and as implying "a demand of a right or supposed right; a thing claimed or demanded    *    *°    *    as a settler's claim."—Webster. It must have been the intention of congress that it should be known with certainty, at the date of the location of the road, by reference to the records of the land department, what lands were included in the grant, and that the right of the company, as against the United States, in the selection of their lands, should not be dependent upon the validity or invalidity of claims then existing, nor upon the contingency of their being afterwards either perfected, abandoned, or forfeited by the claimant; these matters being of concern to the government alone.

In construing this language, it must be borne in mind that being of grant, it must be taken most strongly against the grantee. Such was the rule applied by the supreme court of the United States, in *Leavenworth, etc., R. R. Co. v. The United States*, 92 U. S., 733. In that case, speaking of scope and effect of grants similar to this one, the court

said: "Private entries, pre-emption, and homestead settlements, and reservations for special uses, continued within the supposed limits of the grant the same as if it had not been made; but they ceased when the routes of the roads were definitely fixed; and if it appeared that a part of the lands within those limits had been either sold at private entry, taken up by pre-emption, or reserved by the United States, an equivalent was provided" by permitting other lands in equal quantity to be taken in their stead. "Having thus given lands in place, and ·by way of indemnity, congress expressly declared, what the act already implied, that lands otherwise appropriated, when it was passed, were not subject to it."

In the court below considerable time was devoted to the question of whether the pre-emption claims of Daniel Doyle were valid. As we view the grant to the railroad company this inquiry was unnecessary, and could have no influence upon the result of the case. It is enough that he had made â settlement upon the land, and in due time filed in the proper land office his declaratory statement of his intention to pre-empt it. This constitutes a claim, and, as we must hold, was sufficient to take the tract in question out of the operation of the plaintiff's grant.

JUDGMENT AFFIRMED.