(Opinion published 56 N. W. Rep. 352.)

---

PRINCE INVESTMENT CO. *vs.* DORATHEA EHEIM.

Submitted on briefs July 12, 1893. Affirmed Oct. 10, 1893.

No. 8238.

**Selection of Additional Lands Granted in Aid of Railroads.**

The four ·additional alternate sections per mile of land granted in aid of railway construction by an act of congress approved May 12, 1864, (13 Stat. ch. 84, § 7, p. 72,) were to be selected in the same manner as were the lieu or indemnity lands provided for in the original land grant act of March 3, 1857.

**Effect of Withdrawal from Sale of Public Lands.**

The voluntary order of the secretary of the interior made soon after the passage of the act of 1864, whereby he reserved and withdrew, as subject to selection under the act, certain lands from sale and entry, vested no rights in the railway company beneficiary inconsistent with the right of a pre-emptor or homesteader to make settlement and entry. The order was revocable, and, in part, would be revoked by allowing a settlement and entry of a certain tract under the pre-emption or homestead laws of the United States.

**The Grant of May 12, 1864, was until Selection a Float Only.**
Until selection was made in the manner prescribed by the act of 1864, the grant of lands was a float only, attaching to no particular tracts.

**Railway cannot Question an Entry Made before Such Selection.**
As the railway company had no vested rights in any particular tract of land until selection, it cannot question the *bona fides* of a prior. entry under the pre-emption laws of the United States.

Appeal by plaintiff, the Prince Investment Company, from an order of the District Court of McLeod County, *Francis Cadwell,* J., made March 21, 1893, sustaining demurrers to its complaint.

On May 12, 1864, the United States owned the southwest quarter of Section thirty-one (31), T. 116, R. 27, in McLeod County. On that day an Act of Congress was approved (13 U. S. Stat. p. 73) granting to the State of Minnesota four additional alternate sections of land per mile for the purpose of aiding in the construction of a railroad from St. Paul to the southern boundary of the State in the direction of the mouth of the Big Sioux River, to be selected within twenty miles of the line of the railroad and upon the same conditions, restrictions and limitations contained in the Act of March 3, 1857 (11 U. S. Stat. p. 195). This grant was accepted by the State March 2, 1865 (Laws 1865, ch. 15) and the lands were granted to and vested in the Minnesota Valley Railroad Company, as fully as the State could then grant the same. In 1870 the name of the Railroad Company was changed to the St. Paul and Sioux City Railroad Company. On July 2, 1864, this land was withdrawn by the United States from sale or entry, and notice thereof sent to the local land office. The line of the railroad was definitely located and map of the route filed August 10, 1865, in the General Land Office. On April 26, 1873, there was filed with the Commissioner of the General Land Office a list of lands selected, including this quarter section, and the list was approved by the Commissioner on May 3, 1873, and by the Secretary of the Interior on May 14, 1873. The lands so selected were on May 21, 1873, certified to the State, and on August 20, 1875, the State conveyed the lands to the Railroad Company and the list was recorded as prescribed by Laws 1875, ch. 97. The Railroad Company conveyed the quarter section to Horace E. Thompson and he conveyed it to the plaintiff.

On June 14, 1864, Patrick McCormick filed in the local Land Office his declaratory statement alleging that he had settled upon this quarter section of land under the preemption laws of the United States. He abandoned it, however, prior to July 2, 1864, and on January 13, 1865, he filed notice of an entry on the land as his homestead under the homestead laws of the United States and on April 1, 1868, he commuted into a location under a military land warrant and on July 16, 1870, he made his proof, and on September 9, 1871, he received a patent therefor in due form.

On March 31, 1871, the Commissioner of the General Land Office on the request of the Railroad Company ordered the Register and Receiver of the Local Land Office at Litchfield to investigate the claim of McCormick. They did so and reported on September 30, 1871, recommending that his entry of this land be cancelled on the ground that he did not settle on the land before it was withdrawn from sale or entry July 2, 1864. The Commissioner of the General Land Office decided on July 27, 1872, that McCormick did not acquire a preemption or homestead right to the land; he appealed, but the decision was on April 18, 1873, affirmed by the Secretary of the Interior and McCormick was ordered to surrender his patent.

The complaint stated these facts and further alleged that the patent to McCormick was invalid because (1) the land had been granted to the State, (2) the land had been withdrawn from sale or entry, (3) the Secretary had decided that his entry was invalid and ordered his patent to be surrendered, (4) the patent was issued by mistake of the clerks in the General Land Office and contrary to law and the rules of the Land Office, (5) that McCormick settled upon the land to sell the same on speculation and not in good faith to appropriate it to his own exclusive use, (6) that his oath on proving his settlement was false in that he had never made any improvement upon the land and had then contracted to sell it and did soon after convey it.

The complaint further stated that the defendant, Dorathea Eheim, is the remote grantee from McCormick of the west half of the quarter section, that the other defendant, Joseph Eheim is her husband, that the land is unoccupied and unimproved and that the defendants and the intermediate grantees all had notice and

knowledge of the facts before purchasing or paying any considera-
tion for the land.  The plaintiff prayed judgment that McCormick's
patent be cancelled and plaintiff's title confirmed, and that neither
of the defendants has any right, title, interest or estate in the
land.

The defendants severally demurred to this complaint.  The trial
court sustained the demurrers and plaintiff appeals.

*Stryker & Moore,* for appellant.

The act of May 12, 1864, was a present grant, its wording being
"that there be and is hereby granted."  It vested a present title
in the State of Minnesota, though a selection of the land granted
was necessary to give precision to said title, and attach it to
any particular tract.  As soon as such selection was made and
approved, the grant then became certain, and by relation had the
same effect upon the selected parcels as if it had specifically de
scribed them.  *Leavenworth, L. & G. R. Co.* v. *United States,* 92 U.
S. 733; *Wright* v. *Roseberry,* 121 U. S. 488; *Schulenberg* v. *Harri-
man,* 21 Wall. 44; *Ryan* v. *Railroad Company,* 99 U. S. 382; *Sioux
City & St. P. R. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 117 U. S. 406;
*Barney* v. *Winona & St. P. R. Co.,* 117 U. S. 228; *St. Paul & S. C.
R. Co.* v. *Winona & St. P. R. Co.,* 112 U. S. 720; *Wisconsin Central
Ry. Co.* v. *Price Co.,* 133 U. S. 496; *United States* v. *Missouri, K.
& T. Ry. Co.,* 141 U. S. 358; *Desert Salt Co.* v. *Tarpey,* 142 U. S.
241; *Winona & St. P. R. Co.* v. *St. Paul & S. C. R. Co.,* 26 Minn.
179; *Winona & St. P. R. Co.* v. *Randall,* 29 Minn. 283; *Musser* v.
*McRae,* 38 Minn. 408, 44 Minn. 343; *St. Paul & S. C. R. Co.* v.
*Ward,* 47 Minn. 40.

McCormick's entry as well as the patent issued to him are and
always have been absolutely void and of no effect whatever, for
the simple reason that the land which they covered was at the time
they were made reserved from sale or entry by the United States
by order of the Secretary of the Interior.  The effect of the reserva-
tion was wholly to remove the land in question from the control,
authority and jurisdiction of the Land Department of the United
States.  That department was thereafter utterly without power to
allow a homestead entry to be filed upon this land or to issue a

patent therefor. If it assumed so to act, its proceedings were contrary to law, and therefore void. *Doolan* v. *Carr*, 125 U. S. 618; *Steel* v. *St. Louis Smelt. & R. Co.*, 106 U. S. 447: *Morton* v. *Nebraska*, 21 Wall. 660; *Reichart* v. *Felps*, 6 Wall. 160; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Mullan* v. *United States*, 118 U. S. 271; *Colorado Coal & Iron Co.* v. *United States*, 123 U. S. 307.

The entry and patent were void because made in disregard of the authorized reservations of the land covered by them and because they were made in violation of a statute which expressly forbade them. McCormick's claim was under the preemption laws, and his patent was made in consummation of such claim. His entry of January 15, 1865, could only have been made upon land subject to preemption (U. S. Rev. Stat., § 2289).

The preemption laws provided (U. S. Rev. Stat., § 2258) that the following classes of land, unless otherwise specially provided by law, shall not be subject to the rights of preemption, to-wit: First, lands included in any reservation by any treaty, law or proclamation of the president for any purpose. *Burfenning* v. *Chicago, St. P. & O. Ry. Co.*, 46 Minn. 20.

*James Schoonmaker*, for respondents.

The equitable actions which an individual may maintain to remove an instrument or other obstruction creating a cloud upon his title, are of two general classes; First, where the instrument complained of is attacked as absolutely void, in which case the relief will be that the instrument be declared null and void, and ordered cancelled; Second where the instrument complained of is attacked as being void as against the rights of the complainant, that is, merely voidable, in which case the relief granted will be either that the instrument is null and void as against complainant, or in a proper case, that the title be held in trust for complainant, and that the same be conveyed to him. *Boggs* v. *Merced M. Co.*, 14 Cal. 278.

The complaint in this action is framed on both theories. Plaintiff claims the patent is absolutely void by reason of the withdrawal by the Secretary of the Interior, July 2, 1864, and for want of authority in the officers of the government to execute it. Is the

patent absolutely void? This question has been fully determined in the negative by this court in the recent case of *Winona & St. P. Land Co.* v. *Ebilcisor*, 52 Minn. 312.

The patent is only voidable and not absolutely void. McCormick filed his declaratory statement in due form eighteen days before the withdrawal. He thereafter had thirty days in which to make proper proof and payment for the land before his declaratory statement became outlawed. U. S. Rev. Stat., §§ 2265, 2267. This declaratory statement was never cancelled by the government, or surrendered to the government by McCormick, except so far as it may be considered as having been cancelled and surrendered by McCormick's homestead entry on January 13, 1865, nearly seven months before the map of definite location was filed. The land was not subject to withdrawal, and the attempted withdrawal did not and could not operate on the land. *Northern Pacific Ry. Co.* v. *Stovenour*, 10 Land Dec. 645; *St. Paul, &c., Ry. Co.* v. *Ward*, 47 Minn. 40; *Kansas P. Ry. Co.* v. *Dunmeyer*, 113 U. S. 629; *Hastings & D. Ry. Co.* v. *Whitney*, 132 U. S. 357; 34 Minn. 538; *Northern Pacific Ry. Co.* v. *Parker*, 143 U. S. 42; *Bardon* v. *Northern Pacific Ry. Co.*, 145 U. S. 538.

Even if we treat the attempted withdrawal as a valid executive order, it by no means prevented the government afterwards, and prior to the approval of the selection, from disposing of the land in any way it saw fit. The withdrawal created no right or equity in the railroad company, and was therefore a matter in which that company was not concerned.

If the patent is merely voidable, plaintiff cannot question it. The cause of action attempted to be set out under this theory is either for relief on the ground of fraud, or an action to enforce a trust. It is immaterial in which class it be placed, though it would seem to be an action to enforce that species of implied trusts usually denominated constructive trusts. Pomeroy Eq. Jur., §§ 155, 1030, 1044. Plaintiff's cause of action, if any, accrued not later than the date of the patent, to-wit, September 9, 1871. The present action was commenced March 14, 1893. There are at least four fatal objections to this branch of the complaint: First, If the cause of action be for relief on the ground of fraud, then it is barred

by G. S. ch. 66, § 6, subd. 6. *McMillan* v. *Cheeney*, 30 Minn. 519 ; Second, If the action is to enforce a constructive trust, then it is barred by subd. 7 of the same section. *Burk* v. *Western Land Ass'n*, 40 Minn. 506; Third, Independent of the statute of limitations, plaintiff's delay of over twenty one years in bringing the action is such gross laches that no court will grant relief. Not only is there no excuse for the delay, but the property has also passed to third parties. *Burk* v. *Western Land Ass'n*, 40 Minn. 506; *Harwood* v. *Railroad Co.*, 17 Wall. 78; *Landsdale* v. *Smith*, 106 U. S. 391; *National Bank* v. *Carpenter*, 101 U. S. 567; *Graham* v. *Boston H. & E. R. Co.*, 118 U. S. 161; *Speidel* v. *Henrici*, 120 U. S. 377; *Bryan* v. *Kales*, 134 U. S. 126; *Galliher* v. *Cadwell*, 145 U. S. 368; Fourth, The plaintiff has no superior equity entitling it to question the validity of the patent. The rule is well settled that a patent is not assailable by a private person, except by one having a superior equity. This equity must ante date the patent. *Murphy* v. *Burk*, 47 Minn. 99; *Minnesota L. & I. Co.* v. *Davis*, 40 Minn. 455; *Dawson* v. *Mayall*, 45 Minn. 408; *Hoofnagle* v. *Anderson*, 7 Wheat. 210; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Field* v. *Seabury*, 19 How. 323; *Sparks* v. *Pierce*, 115 U. S. 408; *Sioux City, &c.*, v. *Griffey*, 143 U. S. 32.

The land in question being indemnity lands, no right, title or claim thereto accrued in favor of plaintiff's grantor until the selection was made and approved by the Secretary of the Interior on May 14, 1873, which was nearly two years after McCormick's patent was issued; and until that time the government had a perfect right to dispose of the land as it saw fit, and the Railway Company had no right to question such disposal. *Kansas P. R. Co.* v. *Atchison H. S. F. Co.*, 112 U. S. 414; *St. Paul & S. C. Ry. Co.* v. *Winona & St. P. Ry. Co.*, 112 U. S. 720, 26 Minn. 179, 27 Minn. 128; *Barney* v. *Winona & St. P. Ry. Co.*, 117 U. S. 228; *Sioux City Ry. Co.* v. *Chicago, M. & St. P. Ry. Co.*, 117 U. S. 406; *Wisconsin Cent. Ry. Co.* v. *Price Co.*, 133 U. S. 496; *United States* v. *Missouri Ry. Co.*, 141 U. S. 358; *New Orleans P. Ry. Co.* v. *Parker*, 143 U. S. 42; *Musser* v. *McRae*, 44 Minn. 344, 38 Minn. 409; *St. Paul & S. C. Ry. Co.* v. *Ward*, 47 Minn. 40.

COLLINS, J.  This was an equitable action brought to have a claim of title to certain real estate, asserted by the defendants, husband and wife, adjudged to be without foundation, and to have a patent deed to said land issued by the United States authorities to one McCormick, said defendants' remote grantor, set aside and canceled, because improperly issued and fraudulently obtained, and also to have plaintiff's alleged title to the premises declared good and valid.  The complaint fully stated the facts constituting the claim of each party, and the defendants separately demurred, on two grounds.  The demurrers were sustained, on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the arguments here were confined to a discussion of that issue.  The plaintiff's title rests upon a deed from a railway company beneficiary, under an act of congress approved May 12, 1864, (13 Stat. ch. 84, p. 72.)  By the terms of the seventh section there were granted, in aid of railway construction, "four additional alternate sections of land per mile, to be selected upon the same conditions, restrictions, and limitations" as were contained in the original land-grant act of March 3, 1857.  It was also provided that these additional sections were to be located within twenty miles of the line of railway, and it is obvious that they were to be selected and obtained precisely as were lieu or indemnity lands under the original act, and until so selected they were subject to the same conditions, restrictions, and limitations.  It is alleged in the complaint that the land in question was reserved and withdrawn by the secretary of the interior from sale and entry on July 2, 1864.  Although a map of the final and definite location of the railway was filed August 10, 1865, the list of lands selected in accordance with the provisions of the act of 1864 was not filed until May 3, 1873.  This list was approved by the secretary on May 14, 1873.  The lands embraced in this list, including the quarter section in controversy, were then certified to the state, and by it conveyed to the railway company.

The law respecting land grants in aid of railways is so well settled that this case is easily disposed of.  The railway company could not, and did not, have any vested right in lands to be acquired under the provisions of the statute of 1864 until such lands were actually selected by the secretary of the interior, and evidently

nothing was done in the way of selection until the lists were approved in May, 1873. Until then the right to the additional four sections per mile was a float only, attaching to no particular tracts of land, and in this respect differing not at all from lieu or indemnity lands provided for in the original act of 1857. As no vested right could attach to the place lands (the odd-numbered sections within six miles on each side of the line of railway as definitely fixed) until these sections were actually ascertained and identified by a legal location of the line, so in regard to the four additional sections, which were to be selected within the still larger limit of twenty miles, there could be no ascertainment and identification until a selection thereof was made in the manner prescribed in the granting statute. But it is argued by appellant's counsel that the rights of the railway company upon selection relate back and attach as of July 2, 1864, the day on which, it is alleged, the secretary reserved and withdrew the land from sale and entry. There is nothing in this position. Even if there had been no prior claim upon, or entry of, the quarter section when the order was made, and it had then been open to selection on behalf of the company, such order of reservation and withdrawal would have implied no vested right in the railway company inconsistent with the right of a pre-emptor or homesteader to make settlement and entry. Such entries by actual settlers of lands within the place limits prior to the ascertainment and actual location of the lines of railway were contemplated and provided for in the act of 1857. The granting statute, in some cases, has required the land department to reserve and withdraw from market or entry lands which might become subject to selection, and in others the officers have done so voluntarily, which was the case here; but this is simply to give the railway companies a reasonable time within which to make their selections. They acquire no vested rights by such reservation or withdrawal. It is not until the selection is made that the unascertained float becomes a vested right to an identified tract of land. *St. Paul & S. C. R. Co.* v. *Winona & St. P. R. Co.*, 112 U. S. 720, (5 Sup. Ct. Rep. 334,) affirming 27 Minn. 128, (6 N. W. Rep. 461.) The voluntary order of the secretary reserving and withdrawing lands from entry or sale which might thereafter be subject to selection created no right or equity in the beneficiary of

the land-grant act, and, exercising the same power or authority which existed to reserve or withdraw the lands, the order might be wholly revoked, or, in part, set aside and disregarded, by an appropriation of a specific tract to some other lawful purpose.

In the case at bar, McCormick filed a declaratory statement under the pre-emption law, June 14, 1864, soon after the enactment of the statute, under which the same tract of land was certified to the state, and by it to the railway company. This was eighteen days prior to the alleged withdrawal and reservation. Final proof was made by the pre-emptor, and a patent was issued to him, bearing date September 9, 1871, about two years before the pretended selection was made in behalf of the railway company. The land had not only been appropriated and patented under the preemption laws of the United States when the attempt was made to select it under the provisions of the law of 1864, but it was covered by a declaratory statement, valid on its face, on which the officers of the land department subsequently acted, when the secretary made his order of July 2, 1864. But counsel for appellant attempt to evade the effect and force of the declaratory statement and the patent by alleging that McCormick was not a qualified preemptor when he filed the declaratory statement in 1864, and that his final proof was made through fraudulent practices and false oaths. It is also alleged that in 1871 an investigation of the good faith of said McCormick when making the pre-emption was ordered by the officers of the land department, which resulted in a finding by the commissioner of the general land office, subsequently affirmed by the secretary, to the effect that the pre-emption was fraudulent. It also appears that the patent was issued several weeks before the investigation was held. These allegations are of no consequence, for, if true, they do not tend to establish plaintiff's title to the land. To the contrary, they show that the railway company could not acquire title to the land under the terms of the land-grant acts upon which it must rely. The right of the railway company to the additional four sections per mile did not attach to any particular tracts until selections were made, as before stated, and at that time McCormick held a patent for the land, based upon a declaratory statement, valid upon its face, filed prior to the alleged withdrawal and reservation from sale and

entry. The land had been otherwise appropriated by the United States when the railway company attempted to secure it through selection. As before stated, the railway company had no vested rights in this or any other particular tract of land until it made its selection, and consequently McCormick's alleged fraudulent acts were no fraud upon it. The general government only, having the right to otherwise dispose of the land pending a selection, can question the *bona fides* of the McCormick entry. Order affirmed.

(Opinion published 56 N. W. Rep. 239.)

Application for reargument denied November 2, 1893.