JOHN R. DONOHUE v. ST. PAUL, MINNEAPOLIS & MANITOBA RAIL-WAY COMPANY.[1]

June 7, 1907.

Nos. 14,993—(1).[2]

**Public Land—Settlement on Unsurveyed Land.**

Rights acquired by settlement and improvement upon unsurveyed land, duly and timely asserted, will, as against an intervening indemnity railroad selection, made under Act of Congress of August 5, 1892, be protected in their entirety, even though the lands claimed lie in different quarter sections and the improvements of the settler are shown to be confined to a single quarter section.

**Railroad Land Grant—Within Place Limits and Indemnity Limits.**

Lands within primary limits and lands within indemnity limits of a railroad land grant are both granted. One distinction between them is that as to lands within the primary limits the company's right attaches upon definite location, while as to lands within indemnity limits it does not attach until selection. A further distinction is that lands within the primary limit, when once excepted from the grant, remain in that condition; whereas, the status of indemnity lands at the date of selection determines the company's right at that time only, and such lands are subject to subsequent selection at any time at which they may be free.

**Same—Selection by Company.**

A railroad grant does not attach to ordinary place lands, if, at the time of the definite selection, the land has been sold, pre-empted, reserved, or otherwise disposed of by the United States, while as to indemnity lands the status at the date of proffering or tendering selection should control the action of the local officers in allowing or rejecting the same during the pendency of a prior adverse claim.

[1] Reported in 112 N. W. 413.     [2] April, 1907, term.

**Same.**

It may be within the authority of the secretary of the interior to permit such selection to stand and to give it his final approval upon failure of contestant to comply with the terms of his order deciding conditionally for the adverse claim. The exercise of this authority is not, however, to be extended so far as to enable the land office to give to the original selection of the railroad company the effect of filing a claim upon the land which, if the company does not see fit to withdraw it, will operate automatically to segregate the land for the railroad company's benefit for an indefinite period, or until an adverse claim in existence at the time of such selection should be matured into a complete title or abandoned subsequently to compliance with the terms of the secretary's order.

**Same—Abandonment of Homestead Entry—Subsequent Entry.**

In this case, at the time of selection of indemnity lands by the railroad company, a settler claimed anterior homestead rights. The contest between the conflicting claims resulted in an order by the secretary that, upon the completion of entry by the heirs of the homesteader, the selection by the company would be canceled. The heirs made the required affidavit and formal application, and paid the money required by section 2290, R. S. (U. S.) and afterwards relinquished. Thereupon the plaintiff entered application to purchase the land under the stone and timber act. It is *held:*

(1) The entry for this land by the heirs of the homesteader was completed. This operated to cancel the railway selection.

(2) The subsequent abandonment of the homestead entry restored the land to the public domain and rendered it subject to disposition according to law as by the entry of this plaintiff.

(3) That plaintiff's entry violated no principle of equity and was entitled to be given full legal effect.

Action in the district court for Itasca county to have plaintiff decreed the owner of certain premises, and that the legal title of defendant is held by it in trust for plaintiff. The case was tried before Spooner, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendant appealed. Affirmed.

This is an appeal by the defendant and appellant railway company from the judgment entered by the district court of Itasca county, decreeing that the plaintiff and respondent was the owner of certain lands in controversy, and that the defendant had no interest therein, but held the legal title from the United States government to the premises in

trust for the plaintiff, and granting relief to the plaintiff accordingly. It appears from the stipulation of facts that on March 17, 1905, the secretary of the interior rendered a decision which recites the essential history of this case and sets forth its status at that time. That decision was as follows:

"The Commissioner of the General Land Office—Sir:

"The department has considered the motion filed by John R. Donohue for review of the decision of December 16, 1904, affirming your office decision holding for cancellation the timber and stone land purchase made by him under the act of July 3, 1878 (20 St. 89), covering lot 12 of Sec. 3, and lots 9 and 10 of Sec. 4, T. 60 N., R. 24 W., Cass Lake, Minnesota, land district, for conflict with the prior selection made of said land by the St. Paul, Minneapolis & Manitoba Railway Company, under the provisions of the act of August 5, 1892 (27 St. 390).

"The tract in question was first selected December 31, 1895, by the St. Paul, Minneapolis & Manitoba Railway Company while the land was yet unsurveyed, and upon the filing of the township plat of survey July 22, 1896, the railway company filed its supplemental list of selections, conforming its previous selections to the line of the public survey. On the same day one Jerry Hickey tendered a homestead application for this and other land, alleging settlement thereon in March, 1893. This application was rejected, and he appealed to your office, but before action was taken thereon he died, leaving his mother, Bridget Hickey, as his sole surviving heir. After his death your office ordered a hearing upon his allegation of settlement antedating the company's selection, and upon the record made at said hearing both your office and the local officers decided against the homestead claimant and in favor of the railway company. The case was prosecuted on appeal to this department, resulting in departmental decision of February 11, 1903 (32 L. D. 8). By that decision the concurring decisions of your office and the local officers were reversed, and it was held that upon completion of entry by the heir of Hickey the company's selection would be canceled.

"The present controversy between Donohue and the railway company is really a prolongation or extension of the original contest; for

101 M.—16

it seems that, as soon as a favorable decision was secured upon the Hickey contest, original homestead entry was completed of the land and was immediately relinquished, whereupon Donohue tendered an application to purchase the land under the timber and stone act.

"In the original decision in this case upon the Hickey contest, the department was moved to its conclusion because of those considerations that are often extended by this department and the courts in favor of the pioneer settler upon public lands. The case invoked by the department in reaching its conclusion was that of Tarpey v. Madsen, 178 U. S. 215, 220, wherein it was said by that court: 'And in this respect we must notice the oft-repeated declaration of this court, that "the law deals tenderly with one who in good faith goes upon the public lands with a view of making a home thereon." Ard v. Brandon, 156 U. S. 537, 543; Northern Pacific Railroad Co. v. Amacker, 175 U. S. 564, 567. With this declaration, in all its fullness, we heartily concur, and have no desire to limit it in any respect; and if Olney, the original entryman, was pressing his claims, every intendment should be in his favor, in order to perfect the title which he was seeking to acquire.'

"Had the real condition been then presented to the department, namely, that the land was not desired by the original settler and those dependent on and claiming through him, but rather that such claim was being used merely for the purpose of avoiding a selection in all other respects regular and valid, to the end that a third party might at this late day initiate a claim to the land, a different conclusion would have been reached; in fact, the authority invoked would have supported such a conclusion.

"The department cannot, therefore, under the circumstances hereinbefore detailed, accord to Donohue a superior claim under his application. It is unncessary to specifically consider the technical questions sought to be raised in the motion now under consideration. Suffice it to say that the cases referred to have no application to the facts presented herein, and upon a most careful consideration of the entire matter the department adheres to its decision of December 16 last, and the motion for review is therefore accordingly denied, and herewith returned to the files of your office relating to said case.

"Very respectfully,          E. A. Hitchcock, Secretary."

On April 10, 1905, pursuant to this decision, Donohue's entry was canceled on the files and records of the land department by the commissioner of the general land office.   At some time in the month of June, 1905, the secretary of the interior approved the selection made by the railway company.   On June 30, 1905, the patent of the United States was issued to said railway company, conveying to said company, under the provisions of the said act of August 5, 1892 (27 St. 390, c. 382), the said lot 12 of section 3, and lots 9 and 10 of section 4, township 60 N., range 24 W.   Donohue never had nor claimed any interest in or to said land until after the relinquishment of the said homestead entry by Bridget Hickey, and never had or claimed any interest whatever in said land, except such as he may have acquired under and by virtue of his said stone and timber·land entry.   Donohue was the attorney for said Bridget Hickey in the proceedings before the land department of the United States hereinbefore mentioned.

   *Thos. R. Benton,* for appellant.

   *J. R. Donohue,* pro se.

JAGGARD, J. (after stating the facts as above).

The first question presented by this appeal is whether, as between the railway company and Jerry Hickey, the railway company had the better right.

The railway company contends:   (1) That Hickey never took possession of, occupied, improved, settled, or established a residence upon lot 12 of section 3, or lots 9 or 10 of section 4, township 60 N., range 24 W., the land in controversy herein, and never in any manner indicated an intention to claim said land under the homestead law, until he filed his homestead application in July, 1896; (2) that Hickey's admitted settlement, improvement, and occupation of lot 15, section 4, town 60 N., range 24 W. (which is a part of the S. E. ¼ of section 4), was not a settlement, improvement, or occupation of the land in controversy (which lies in section 3 and the N. E. ¼ of section 4), or any part thereof, within the meaning of the homestead law.   This controversy has been determined by the secretary of the interior in favor of the homesteader.   Rights acquired by settlement and improvement upon unsurveyed land, and duly and timely asserted upon filing of the plat or survey, will, as against an intervening indemnity railroad selec-

tion, made under the act of August 5, 1892, be protected in their entirety, even though the lands claimed lie in different quarter sections and the improvements of the settler are shown to be confined to a single quarter section. Hickey v. St. Paul, M. & M. Ry. Co., 32 L. D. 8. In so far as this decision found facts, it is conclusive upon this court. Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Baldwin v. Stark, 107 U. S. 463, 2 Sup. Ct. 473, 27 L. Ed. 526; Gonzales v. French, 164 U. S. 338, 17 Sup. Ct. 102, 41 L. Ed. 458. It is not here material how far we are bound by his conclusions concerning questions of law and fact. See Marquez v. Frisbie, 101 U. S. 475, 25 L. Ed. 800; O'Connor v. Gertgens, 85 Minn. 481, 89 N. W. 866. We concur in its conclusions of law.

The second question in this case is whether Hickey's claim and the acts done by him or his heirs in furtherance thereof operated to segregate the land in question from the public domain and were a bar to the railway company's selection.

(1) The railway company contends that, until set aside and canceled, its selection was an appropriation of the land, which segregated it from the public domain and withdrew it from other entry or disposition. In support of this proposition counsel quotes from Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363, as follows: "In the light of these decisions, the almost uniform practice of the department has been to regard land upon which an entry of record valid upon its face has been made as appropriated and withdrawn from subsequent homestead entry, pre-emption settlement, sale, or grant, until the original entry be canceled or declared forfeited." However unintentionally, he has quoted only part of a sentence entire in form and substance. The remainder of that sentence is, "in which case the land reverts to the government as part of the public domain, and becomes again subject to entry under the land laws." If the law of that case determines the present controversy, plaintiff must certainly prevail.

There a homestead entry was held to segregate land from the public domain and to preclude its subsequent disposition as by an act of congress granting lands to a railway company. It cited and approved the holding in Kansas Pacific Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122, that upon subsequent abandonment of

such a homestead claim land thus segregated "passed back into the mass of public lands and was not brought within the grant." If the premises here involved were ordinary granted lands, there could be no controversy as to the plaintiff's right to prevail on this branch of the case. In Oregon & California R. Co. v. U. S., 190 U. S. 186, 189, 23 Sup. Ct. 673, 675, 47 L. Ed. 1012, Mr. Justice Brown said: "That a railway grant does not attach to lands which at the time of the definite location of the line have been sold, pre-empted, reserved, or otherwise disposed of by the United States for any purpose, has been so often decided by this court as to be no longer open to question." The court then reviews in detail the facts and the opinions in a large number of the important cases. It would uselessly incumber this record to dwell on this point further.

(2) The defendant, however, seeks to avoid this incontrovertible conclusion by showing that all the cases announcing it involved granted lands within place limits; whereas, the lands here in question were selected to supply deficiencies and were in lieu of other lands. As to such lands, he insists, the right is a "float," and attaches on selection. The argument is that, as to such lands, the existence of an entry or claim at the time the selection was proffered or tendered is not, if the claim or entry be afterwards abandoned, a bar to the completion and perfection of the selection and the acquisition of title to said lands by the railroad company. He carries the logic of the distinction to the point of insisting that the original selection operated to entitle the railroad company to lands upon which a homestead affidavit had been made, the land office fees and commissions paid, and a homestead entry made, in accordance with section 2290 of the Revised Statutes of the United States [U. S. Comp. St. 1901, 1389], without further action by the railroad company. That there is a distinction between granted and indemnity lands is not questioned. See Ryan v. Railroad Co., 99 U. S. 382, 25 L. Ed. 305; Wisconsin Central v. Price Co., 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687.

We think, however, that neither the cases which defendant cites nor the distinction itself justifies his conclusions in the abstract or its application to the facts in this case. Its brief places emphasis on Oregon & California R. Co. v. U. S., 190 U. S. 186, 23 Sup. Ct. 673, 47 L. Ed. 1012. There a settlement had been made fifteen years before the selec-

tion of the lands in question as "lieu lands" under a railroad land grant. The land continued to be the property of the United States, to which the railroad grant subsequently attached, unless such grant was defeated by the fact that the donation notification still remained of record in the office of the attorney general. It was held that the railroad company was authorized to infer that the donee had abandoned the lands and that the lands were not reserved, within the meaning of the granting act. The case at bar turns upon a controversy between an active, present, adverse claim, which it is insisted matured into a definite, equitable interest, and the railroad selection.

Our attention has been called also to some decisions of the land department which properly involve discussion. Those decisions are not binding, but are entitled to great respect. Lamar, J., in Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 115, 33 L. Ed. 363. "The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons. * * * The officers concerned are usually able men and masters of the subject. Not infrequently they are the draftsmen of the laws that they are afterwards called upon to interpret." U. S. v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588.

The first of these cases is Northern Pacific R. Co. v. Dean, 27 L. D. 462. At page 463 of that decision it is said: Reference was made to the decision in Southern Pacific R. case, 21 L. D. 423, wherein it was said: " 'The lands within the primary and indemnity limits are both granted; the particular difference between the two being the time of the attachment of rights. Within the primary limits the company's right attaches upon definite location, while within indemnity limits it does not attach until selection. But any claims that would serve to prevent the attachment of rights under the grant to a tract within the primary limits, because existing at the date of definite location, would by parity of reasoning, if existing at the date of selection of indemnity land, serve as a bar to the acceptance of such selection.' While adhering to the views thus quoted, a further distinction might be pointed out between lands within the primary and indemnity limits; i. e., that the former, when once excepted from the grant, remain in that condition, whereas, as to the latter, the status of the

land at the date of selection determines the company's right at that date only. That is to say, indemnity lands are subject to selection at any time when they are free."

That case in the first place recognized the right of the railway company to make entry upon indemnity lands at any time at which they are free from entry; that is, in this case, if the railway company had again selected the land after the relinquishment of the homestead right and before Donohue's entry, it would have acquired a superior right. In the second place, that case sustained the practice of the land office in holding the company's selection subject to the right of the applicants to complete their claims. When they failed to respond upon notice, and in effect abandoned their applications, the anterior selection of the railroad company was given effect. Such a holding, applied to the facts in the present case, justifies the practice of the land office in treating the selection of the railway company as suspended until it was determined whether the homestead entry should be completed or not. Upon its completion, inferentially, the ordinary rule would apply, and the railroad company would have no right to the premises which would then become a part of the public domain. Upon failure to complete the entry, the railway selection would become effective.

In Northern Pacific v. Fly, 27 L. D. 464, the substance of the opinion was that, while "the status of the land at the date of proffering or tendering selection [of indemnity lands by a railroad company] should control the action of the local officers in rejecting the same or allowing it to go of record during the pendency of a prior adverse claim, it is within the authority of the secretary to permit such selection to stand, and to give it his final approval upon the subsequent abandonment or other elimination of the adverse claim. This results from the fact that a railroad indemnity selection does not become finally effective until approved by the secretary, and if at that time the land is free, and the company is entitled to the indemnity, the fact that there was an adverse claim when the selection was proffered or tendered constitutes no legal obstacle to the secretary's approval under the law." The decision held that upon the completion of the entry by the prior adverse claimant "the company selection will be canceled." The reason for this grew out of the fact that many years had elapsed

since that claimant had tendered his application, and it might have been that he had abandoned his claim to the land and was otherwise unable to complete it. The decision, therefore, amounted to a holding that "the fact that such land is at one time not free, and therefore not then subject to selection, does not preclude its subsequent selection. * * *" The selection stands of record, "subject to the perfection of the adverse claim." To apply the reasoning of the case to the one at bar, the question is, what is "the perfection of the adverse claim"? In the Fly case, as in the present case, that was the completion of the entry, and not the acquisition of a title. The claimant in the Fly case failed to complete his entry, and therefore lost his interest. By a parity of reasoning in the present case, if Hickey or his heirs failed, not to acquire a patent, but to complete the homestead entry, then the railway company would have been entitled to the land.

In Dunnigan v. Northern Pacific R. Co., 27 L. D. 467, Dunnigan resided on the land and made improvements. It does not appear that he was qualified to make homestead entry thereon or that he ever applied to enter the land. It was very properly held that whatever interest he had was personal, and was not transferable. In the case at bar the plaintiff does not claim through any succession to the interest of the original homesteader.

(3) These decisions do not give to the original selection of the railroad company the effect of filing a claim upon the land, which, if the company does not see fit to withdraw it, will operate automatically to segregate the land for the railroad company's benefit for an indefinite period, or until an adverse claim in existence at the time of such selection should be matured into a complete title, or abandoned subsequently to compliance with the secretary's order. The defendant is entitled to no such option or preference. A "float" does not mean a cloud on title hovering over indemnity lands once selected by a railway company. The logic of these opinions and of the distinction itself may justify the conclusion that the selection of the railway company may be permitted to stand and may receive the final approval of the secretary in case the person asserting the adverse right has failed to comply with the terms of the decision of the controversy by the department in accordance with congressional legislation; but it justifies no more. In the first place, the mere selection of the lands by the railway company

conferred upon it no title in equity or otherwise. "The approval of the secretary was essential to the efficacy of the selections. * * * His action in that matter was not ministerial, but judicial." Mr. Justice Field, in Wisconsin Cent. R. R. Co. v. Price Co., 133 U. S. 496, 10 Sup. Ct. 341, 345, 33 L. Ed. 687. The rights of the railway company were determined by his order. The terms of that order suspended its right until the homestead entry should or should not be completed. They are not to be distorted into securing a further suspension until the homesteader had not only completed his entry in accordance with its terms, but also had taken further steps not referred to in that order nor required by it. The decision of the land department was res adjudicata as to the rights of the railway company. In the second place the order could not legally have given the defendant's selection the effect of a lien or claim surviving the completion of the adverse homestead entry and operating in defendant's favor as a sort of "shifting use" in case of subsequent abandonment or relinquishment of the homestead right. This is obvious from its mere statement, and is clear upon authority.

The railway company's right to the land could not have been held in indefinite abeyance to await the subsequent default of the settler. Perkins v. Central Pacific R. Co., 1 L. D. 357. The language of Mr. Justice Miller in Kansas Pacific Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122, is apt: "Did congress intend to say that the right of the company also attaches, and whichever proved to be the better right should obtain the land? It is not conceivable that congress intended to place these parties [homestead and pre-emption claimants on the one hand and railway companies on the other] as contestants for the land, with the right in each to require proof from the other of complete performance of his obligation. Least of all is it to be supposed that it was intended to raise up, in antagonism to all actual settlers on the soil whom it had invited to its occupation, this great corporation, with the interest to defeat their claim and to come between them and the government as to the performance of their obligation." The action of the land department cannot override the express will of congress, or convey any lands in disregard or defiance thereof. Burfenning v. Chicago, St. P., M. & O. Ry. Co., 163 U. S. 321, 322,

16 Sup. Ct. 1018, 41 L. Ed. 175. That is, however, the logical result of defendant's contention.

The railway company's lists were made under the act of August 5, 1892, by the terms of which the Manitoba Company, in lieu of its relinquishment of other lands to which it had been held by the courts to be entitled, but which the United States had disposed of in disregard of the railroad claim, was granted a right to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of the actual government survey, of the United States, not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of making of such selection. Moreover, under section 2297 of the Revised Statutes [U. S. Comp. St. 1901, 1398] it is provided that upon a change of residence, or abandonment, as therein mentioned, before the expiration of the five years, "then and in that event * * * shall revert to the government."

Where the homestead entry on public lands has been made by a settler, the lands so entered cannot, while such entry stands, be set apart for an authorized public purpose, even prior to the completion of the full title of the settler. Upon entry in favor of the settler a right attaches to the land, which is liable to be defeated only by failure on his part to comply with the requirements of the homestead law in regard to settlement and cultivation. This right amounts to an equitable interest in the land, subject to the future performance by the settler of certain conditions, in the event of which he becomes vested with a full and complete ownership. Fuller, C. J., in Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, 353, 33 L. Ed. 761, approving a celebrated opinion by Attorney General MacVeagh. A number of authorities tend to sustain this conclusion more or less specifically. In State v. Southern Pacific Ry. Co., 27 L. D. 542, the railway company's indemnity selections were noted on the books of the land office, but were rejected, because they conflicted with a timber culture entry. The railroad company appealed. Pending the appeal, the state secured a relinquishment from the claimant and immediately filed it, and then made selection of the land for itself. It was held that the record of the timber culture entry was a bar to the selection under the railroad grant, that the rejection of the company's indemnity list was proper, and that the company gained nothing by the appeal. See also Ard v. Brandon, 156 U.

S. 537, 15 Sup. Ct. 406, 39 L. Ed. 524; U. S. v. Turner (C. C.) 54 Fed. 228; De Lacey v. N. P. R. Co., 72 Fed. 726, 19 C. C. A. 157; Burlington R. Co. v. Abink, 14 Neb. 95, 15 N. W. 317; Prince Inv. Co. v. Eheim, 55 Minn. 36, 56 N. W. 239; St. Paul & S. C. R. Co. v. Ward, 47 Minn. 40, 49 N. W. 401.

(4) The substance of the controversy in this case, in the view here taken, depends upon what was done under the order of the secretary of the interior, viz.: "Upon the completion of entry for this land by the heir of Hickey, the selection by the company as to the lands here in question will be canceled." Defendant contends that an entry conforming merely to section 2290 of the Revised Statutes is not a completed entry, but that residence and cultivation and proof required by section 2291 [U. S. Comp. St. 1901, 1390] are essential thereunto. The reasonableness of this argument is not apparent. The admitted facts show, and the department found, a completion of the entry. The secretary, on December 16, 1904, held that:

> The cancellation of the company's selection was rightfully withheld, awaiting the action of the heir, Bridget Hickey. * * * Instead of making completion of entry, it appears that she filed a new application as heir, and made an original entry of the land. This was not contemplated in departmental decision, or necessary, and it must be held that, upon the relinquishment of said entry by Bridget Hickey, the rights of the company under its selection, which was still pending, attached, and the entry of Donohue should not have been allowed.

This holding was reversed on March 17. It was then found as a fact that, "as soon as a favorable decision was secured upon the Hickey contest, original homestead entry was completed of the land." Whether this be regarded as binding upon this court as a finding of fact, or of mixed fact and law, or not, is not material; for the record shows that the Hickey heirs (1) made an affidavit setting forth the facts entitling them to make entry; (2) they also made a formal application; (3) they also paid the money required. "When these three requisites are complied with * * * the land is entered." Hastings & Dakota R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363,

Chotard v. Pope, 12 Wheat. 586, 6 L. Ed. 737, and Sturr v. Beck, supra, accord, in our opinion, notwithstanding defendant's argument to the contrary. See also Gilbert v. Spearing, 4 L. D. 463; Iddings v. Burns, 8 L. D. 224, 226.

(5) The conclusions reached on this, the principal, branch of this case, are as follows: The homestead entry was completed in accordance with the order of the land department. That operated as a matter of law to cancel the railroad selection. Northern Pacific R. Co. v. Reed, 27 L. D. 651. The legal effect of the original selection ceased as to the land here in question. To the railroad company was restored its right to select the same quantity of land from the public domain available for that purpose. The homestead entry was abandoned or relinquished. That operated to pass the land back to the public domain and to subject it to disposition according to law. The railroad company might then have selected it, or Donohue might have made entry, as he did, or any one else might have asserted a claim as permitted by congress. Priority of right between such claimants would be determined by priority of record of selection entry or claim.

The third question presented by the assignments of error is whether "plaintiff's action should have been dismissed for want of equity." It is not material what the department would have done, had it known of the facts in connection with Donohue's entry. The question on that point before it and before us was purely one of law. In the view here taken, Donohue should have prevailed, because he exercised his legal right to make an entry, and because the railroad company, failing so to do, relied without justification upon a selection which had ceased to be of legal force and upon an order which had become functus officio. No principle of equitable jurisprudence was considered or applied by the department; nor was it involved. No investigation was made, nor should have been made, as to equity used in a colloquial sense. If Donohue's good faith was relevant, it should have been made the subject of judicial inquiry, and not of personal conjecture. That we are satisfied his action was in the protection of the interests of the Hickey heirs is as wholly immaterial to the merits of the controversy as the impression of the land department at a great

distance from the scene of controversy that the land was not desired by the original settlers and those dependent on and claiming through them.

Judgment affirmed.